OPINION
{¶ 1} Appellant, Shane R. Elersic ("Elersic"), appeals from the judgment entered by the Geauga County Court of Common Pleas. Elersic was convicted of breaking and entering, theft, possession of criminal tools, and failure to comply with an order of a police officer.
 {¶ 2} In the early morning hours of June 28, 1999, an alarm was activated in the pro shop at St. Denis Golf Course ("St. Denis"), in Chardon, Ohio. Norbert Foecking, the owner of the golf course, lives in a nearby residence. He responded to the pro shop and witnessed two masked individuals in the pro shop. He called the authorities.
 {¶ 3} Deputies from the Geauga County Sheriff's Department responded to the scene. Upon responding to Foecking's call, one officer noticed a Chevrolet Blazer leaving an access driveway of St. Denis. The officer activated his overhead lights and sirens, but the vehicle did not stop. A ten-mile chase ensued. The chase ended in Lake County, when officers from another department deployed a spike-strip, which punctured the Blazer's tires. The Blazer lost control, slid off the road, and hit a utility pole. Both of the occupants of the Blazer fled the crash site on foot and were not immediately apprehended.
 {¶ 4} Officers discovered that the Blazer was owned by Gina Topazio, who was Elersic's girlfriend. She informed the officers that Elersic had been driving the Blazer on the night in question.
 {¶ 5} Michael Fazzolare ("Fazzolare") admitted that he was one of the individuals involved in the St. Denis incident. At Elersic's trial in Geauga County, Fazzolare testified as a principle witness for the state. Fazzolare testified that he and Elersic had committed the St. Denis break-in, along with various other burglaries in the Lake and Geauga county area.
 {¶ 6} Fazzolare also testified against Elersic at Elersic's Lake County trial. There, Elersic was convicted of crimes resulting from burglaries at various establishments in Lake County. On appeal, this court reversed Elersic's convictions from Lake County.[1]
 {¶ 7} In the instant matter, Elersic was charged in a six-count indictment with various crimes involving the break-in at St. Denis, the subsequent police chase, and other break-ins in Geauga County. The counts involving the other Geauga County break-ins were subsequently dismissed. The remaining charges against Elersic included theft, possession of criminal tools, and failure to comply with an order of a police officer.
 {¶ 8} In June 2000, a second indictment was issued, charging Elersic with one count of breaking and entering, also resulting from the St. Denis incident. The second indictment was assigned a separate case number. These cases were consolidated at the trial court level.
 {¶ 9} Elersic pled not guilty to all of the charges against him. A jury trial was held, and the jury found him guilty of all charged offenses in both indictments. Elersic was sentenced to terms of ten months each for his convictions of breaking and entering, theft, and possession of criminal tools. He was also sentenced to a term of fourteen months for his conviction for failure to comply with an order or signal of a police officer. These terms were ordered to be served concurrently to each other and consecutively to the sentence Elersic was serving out of Lake County.
 {¶ 10} Elersic raises six assignments of error on appeal. These assignments of error will be addressed out of order. Elersic's first assignment of error is:
 {¶ 11} "The trial court committed reversible error by denying the appellant's motion to suppress evidence unlawfully obtained from the appellant's vehicle."
 {¶ 12} Soon after learning that Elersic was a suspect in this matter, the police seized his Mazda automobile from the parking lot of the apartment complex where Topazio resided. The police were awaiting the execution of a search warrant. Pursuant to local procedure, the car was towed to the Lake County Sheriff's Office. There, upon receipt of the search warrant, the police searched the Mazda. Elersic filed a motion to suppress the evidence obtained as a result of the search and seizure.
 {¶ 13} This court addressed this identical issue in Elersic's appeal from his Lake County convictions.[2] In that case, the trial court also denied a motion to suppress evidence obtained from the search of the Mazda. Subsequently, this court held that the initial seizure was unconstitutional and that the Lake County Court erred by denying the motion to suppress.
 {¶ 14} The state argues that, even if the motion to suppress was improperly denied, this issue is moot because none of the evidence from the Mazda was introduced at trial. We agree. Therefore, we will not address the validity of the search. Since no evidence from the Mazda was used against Elersic in the case sub judice, any error by the trial court in denying Elersic's motion to suppress was harmless beyond a reasonable doubt.
 {¶ 15} Elersic's first assignment of error is without merit.
 {¶ 16} In his fourth assignment of error, Elersic argues the trial court committed reversible error and abused its discretion by permitting improper evidence of "other acts" at trial.
 {¶ 17} Fazzalore testified to the following "other acts": (1) that Elersic had threatened Fazzolare and his family if he testified against him; (2) that he and Elersic broke into a residence in Hillwick; (3) that they broke into the Red Hawk Grille; (4) that they broke into the Concord Nursery; and (5) that they broke into Great Lakes Auto Recycling.
 {¶ 18} In Elersic's Lake County appeal,[3] we addressed similar issues regarding the admission of Elersic's alleged "prior acts." In that case we held the testimony concerning the alleged threats made by Elersic to Fazzolare was inadmissible. See, Elersic, supra, at 28. However, we noted the state "offered no justification for this testimony in its appellate brief, and this court is unable to discern the relevance of this testimony to proving that appellant committed the crimes for which he was indicted. Therefore, we conclude that the trial court erred in admitting this testimony over appellant's objection." Id.
 {¶ 19} In the case sub judice, we note that defense counsel did not object to the testimony regarding the alleged threats. However, even had defense counsel objected, the court did not err in admitting this evidence. At trial, there was testimony regarding an affidavit prepared by Fazzolare recanting his prior statements and testimony in the Lake County Case.[4] Thus, his trial testimony regarding the threats had relevance because it provided a reason for Fazzolare agreeing to the affidavit recanting his prior testimony. Therefore, the evidence of the alleged threats was properly admitted.
 {¶ 20} In the Lake County case, evidence of the St. Denis crime, inter alia, was introduced against Elersic. In this case, evidence of the Lake County crimes was introduced against Elersic. In the Lake County opinion, we held that evidence about the St. Denis break-in was admissible in Elersic's trial for the Red Hawk Grille, Concord Nursery, and Great Lakes Auto Recycling incidents. However, this court held that evidence pertaining to the Hillwick incident was inadmissible, since no modus operandi was established between that crime and the underlying charges. See, Elersic, supra, at 30-31. We will now address the lower court's admission of the prior acts evidence in the context of the current matter.
 {¶ 21} The applicable authority on the admission of evidence of other acts is Evid.R. 404(B), which states:
 {¶ 22} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 23} Evidence of other acts under Evid.R. 404(B) is to be construed against admissibility. State v. Lowe (1994), 69 Ohio St.3d 527,530. This is because the average individual is more disposed to believe that a person committed the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime. See Statev. Hector (1969), 19 Ohio St.2d 167, 174-175.
 {¶ 24} Nonetheless, evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant and (2) the evidence tends to prove one of the purposes specifically stipulated in Evid.R. 404(B). Lowe, supra, at 530.
 {¶ 25} The state argues that the other acts are admissible to prove identity. Other acts can be evidence of identity in two types of situations: First, are those circumstances where other acts are part of the specific background of the alleged act forming the foundation of the crime charged in the indictment and which are inextricably related to the alleged criminal act. Lowe, supra, at 531. In the current matter, the other acts under consideration do not tie Elersic to the immediate background of, nor are they inextricably related to, the St. Denis break-in. To wit, the other acts in this case are separate from the planning, execution, and aftermath of the crime at issue. Id.
 {¶ 26} Alternatively, other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. A modus operandi is a "behavioral fingerprint," which can link an individual to a present crime based on similar characteristics from previous incidents. Id. "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)." State v. Jamison (1990),49 Ohio St.3d 182, syllabus. Further, "`[o]ther acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." State v.Smith (1990), 49 Ohio St.3d 137, 141. While other acts need not be the same as or similar to the crime charged, they should show a modus operandi identifiable with the defendant. Lowe, supra, at 531.
 {¶ 27} In the instant case, Fazzolare testified to the background facts of the St. Denis break-in. Fazzolare stated that he and Elersic drove to the golf course in Gina Topazio's truck. Both Fazzolare and Elersic were wearing dark clothing with gloves and masks. Moreover, each party had a backpack containing tools. Fazzolare also testified that he kept watch while Elersic cut the phone wires to dismantle the speaker for the alarm.
 {¶ 28} The other acts testimony regarding past break-ins involve certain unique characteristics which tend to establish an identifiable modus operandi. Most pronounced is Fazzolare's testimony that, during the break-ins at Great Lakes Auto Recycling, the Red Hawk Bar and Grill, and the Hillwick residence, Elersic disabled the alarm systems so that the parties could gain entry. In fact, during the Great Lakes Auto Recycling and Red Hawk Bar and Grill break-ins, Fazzolare testified that Elersic had disabled the particular alarms by cutting the phone lines.
 {¶ 29} In our view, the Great Lakes Recycling, Red Hawk Bar and Grill, and the Hillwick break-ins share a unique similarity with the St. Denis break-in, i.e., during each of these alleged incidents, Fazzolare testified that Elersic dismantled each relative alarm system to facilitate the break-ins. Thus, under Evid.R. 404(B) the evidence of these break-ins was permissible.[5]
 {¶ 30} However, during his testimony, Fazzolare did not testify to any unique "behavioral fingerprint" that might reasonably show a modus operandi for the Concord Nursery break-in. This does not necessarily imply the Concord Nursery break-in evidence was improperly admitted. That is, the state can establish that the accused committed an offense by demonstrating that he has committed similar crimes within a period of time reasonably near to the offense on trial and that a similar scheme, plan, or system was utilized to commit both the offense at issue and other crimes. State v. Coleman (1988), 37 Ohio St.3d 286, 292; citing State v.Curry (1975), 43 Ohio St.2d 66, 73. The past crimes to which Fazzolare testified in sum demonstrate a discernable plan or system all of which occurred within a reasonably close period of time. Moreover, the trial judge provided the jury with limiting instructions to this effect:
 {¶ 31} "Evidence was received about the commission of crimes or acts other than the offenses for which the defendant is charged in this trial; that evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he had acted in conformity with that character.
 {¶ 32} "If you find that the evidence of other crimes or acts is true, and that the defendant committed them, you may consider that evidence for the purpose of deciding whether it proves the defendant's plan to commit the offenses charged in this trial."
 {¶ 33} Fazzolare's testimony regarding the past crimes conveys an overriding scheme, plan, or system of breaking and entering. Moreover, the judge's limiting instruction provided the jury sufficient warning and guidance regarding the purpose for which the "other acts" evidence was admitted. Thus, we hold that the evidence of the past criminal acts was properly admitted as evidence of a scheme, plan, or system.
 {¶ 34} However, even if Fazzolare's testimony concerning the past criminal acts was improperly admitted, the admission does not constitute reversible error in this instance. At worst, it is harmless in light of the abundance of other evidence adduced at trial pointing to Elersic's guilt. State v. Davis (Dec. 31, 1998), 11th Dist. No. 97-L-246, 1998 Ohio App. LEXIS 6389, at 18; see, also, Crim.R. 52.
 {¶ 35} The state established that the owner of the St. Denis golf course observed two masked individuals flee the pro shop carrying the St. Denis safe. Police subsequently arrived and observed a 1985 Chevrolet Blazer leaving the area. The Blazer led the police on a chase that ended when the vehicle ran over stop-sticks deployed by the police, which caused the Blazer to go out of control and ultimately crash. The vehicle's two occupants fled from the vehicle on foot. The police seized the Blazer and found it to contain the St. Denis safe along with various tools. The authorities determined that the vehicle belonged to Gina Topazio, Elersic's fiancée at the time. The police interviewed Topazio who indicated Elersic took the Blazer earlier that evening. Ultimately, the police obtained a detailed confession from Michael Fazzolare, Elersic's confederate. Due to the overwhelming evidence against Elersic, we hold the admission of the improper "other acts" evidence harmless.
 {¶ 36} Therefore, appellant's fourth assignment of error is without merit.
 {¶ 37} In his second assignment of error, Elersic contends that the trial court committed reversible error by excluding his brother's testimony regarding Elersic's whereabouts between 12:30 a.m. and 1:00 a.m. on the evening of the crime.
 {¶ 38} Crim.R. 12.1, which states, in part:
 {¶ 39} "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. * * * If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
 {¶ 40} Elersic did not file a notice of alibi pursuant to Crim.R. 12.1. Therefore, the trial court was permitted to exclude the alibi testimony. See Crim.R. 12.1.
 {¶ 41} Elersic claims that his trial counsel was not permitted to explain why a notice of alibi was not filed. The following portion of the record rebuts Elersic's claim:
 {¶ 42} "THE COURT: * * * Prosecutor, did you get a notice?
 {¶ 43} "MR. QUINLAN: [assistant prosecutor] No, sir.
 {¶ 44} "THE COURT: Do you wish to say anything for the record, Mr. Murray [defense counsel]?
 {¶ 45} "MR. MURRAY: No, Judge."
 {¶ 46} The trial court did give Elersic's trial counsel an opportunity to explain. However, counsel did not set forth a reason for failing to file a notice of alibi. Nor did counsel make an argument that the testimony was being used for some purpose other than an alibi.
 {¶ 47} On appeal, Elersic argues that the bill of particulars was not sufficiently specific because it did not mention specific times. Therefore, he did not know exactly what times the alleged crimes were committed. The bill of particulars indicated that the crimes associated with St. Dennis occurred "on or about June 28, 1999." Elersic never filed any objections to the bill of particulars for the alleged lack of specificity.
 {¶ 48} In addition, trial counsel was fully aware of the precise times of the offense due to the evidence presented at the suppression hearing. Lieutenant Lonnie Sparkman of the Lake County Sheriff's Office testified that he received a call between 2:00 a.m. and 3:00 a.m. on June 28, 1999, informing him of the high-speed chase. It can be deduced from this testimony that the St. Denis crimes occurred during the early morning hours of June 28, 1999.
 {¶ 49} Moreover, Elersic claims that his brother's testimony was not truly alibi evidence because it did not necessarily preclude the possibility that he committed the crime. "Alibi has been defined as follows: `the defense of alibi means that the defendant claims he was at some place other than the scene of the crime at the time the crime was taking place, hence he could not have taken part.'" (Citations omitted),State v. Cloud (Sept. 26, 2001), 7th Dist. No. 98-CO-51, 2001 Ohio App. LEXIS 4419, at 12.
 {¶ 50} Although the precise timeframe regarding the commission of the crime is not completely clear, Elersic was attempting to introduce alibi evidence; i.e., Elersic was attempting to show that he was at his brother's residence at the time of the crime. This conclusion is patent because the testimony is otherwise irrelevant. Elersic did not file a notice of alibi pursuant to Crim.R. 12.1. Therefore, the trial court did not err by prohibiting this testimony.
 {¶ 51} Elersic's second assignment of error is without merit.
 {¶ 52} Elersic's third assignment of error is:
 {¶ 53} "The appellant received ineffective assistance of counsel in violation of his rights pursuant to the sixth amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution." Specifically, Elersic argues that his counsel rendered ineffective assistance by his failure to file the requisite notice of alibi testimony.
 {¶ 54} In State v. Bradley (1989), 42 Ohio St.3d 136, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance." Id., at paragraph two of the syllabus, adopting the test set forth in Strickland v.Washington (1984), 466 U.S. 668.
 {¶ 55} In addressing Elersic's claim, we must recapitulate Elersic's argument made under the preceding assignment; viz., Elersic's contention that the alleged alibi evidence excluded pursuant to Crim.R. 12.1 was not truly alibi evidence. In his brief, Elersic states:
 {¶ 56} "Since the Appellant's brother was, as might be expected, unable to specifically state at what point between 12:30 a.m. and 1:00 a.m. he had encountered the Appellant at his home, the evidence before the jury did not establish that it would have been impossible for the Appellant to have both spoken with his brother and still been at the scene of the crime."
 {¶ 57} In our view, appellant's argument fundamentally undermines any claim that he was prejudiced by his counsel's failure to file the notice of alibi. To show prejudice under Strickland a party must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability sufficient to undermine confidence in the outcome." Id., at 694.
 {¶ 58} We cannot say that appellant was prejudiced by the omission of his brother's alibi testimony because, as Elersic argues, there is no necessary temporal overlap. That is, if Elersic maintains that he could have committed the crime despite his brother's testimony, the exclusion did not undermine the reliability of the outcome. As such, Elersic's third assignment of error is overruled.
 {¶ 59} In his fifth assignment, Elersic argues that the trial court committed reversible error by improperly chastising his trial counsel in front of the jury.
 {¶ 60} Elersic alleges that the trial court showed bias toward him during the trial in the way it handled the situation with the alibi evidence. As discussed in our analysis of Elersic's second assignment of error, the trial court correctly ruled that the alibi evidence was inadmissible due to the failure to file a notice of alibi. Thus, we do not see that the trial court was biased toward Elersic on this matter.
 {¶ 61} He also asserts that the trial court was biased in the manner it handled the following colloquy, which occurred during the defense phase of the trial.
 {¶ 62} "Q. [by Mr. Murray] Mrs. Mucciarone, do you think your son committed this crime?
 {¶ 63} "A. [Mrs. Mucciarone] absolutely not.
 {¶ 64} "MR. QUINLAN: objection.
 {¶ 65} "THE COURT: That is sustained.
 {¶ 66} "MR. MURRAY: I'm sorry. I'll withdraw it.
 {¶ 67} "THE COURT: The answer is stricken and, Mr. Murray, you know you are not to ask that question. You have crossed the line, sir.
 {¶ 68} "MR. MURRAY: I'm sorry, Judge.
 {¶ 69} "THE COURT: Sorry doesn't do it, Mr. Murray. We will talk later. Consider yourself admonished in front of the jury which is an unusual thing. You know that.
 {¶ 70} "MR. MURRAY: I apologize to the Judge and jury."
 {¶ 71} In addition to the above colloquy, the trial court revisited this issue after both sides had finished questioning the witness. The trial court stated:
 {¶ 72} "Before I release this witness, ladies and gentlemen, an explanation. Mr. Murray was chastised by me. You are to base any decisions you make on evidence you hear in this case. You are not to base it on the opinions of Mr. Murray, Mr. Quinlan, a defendant's mother, Mr. Fazzolare. It is your decision based on evidence. And that's why counsel was chastised."
 {¶ 73} Elersic cites this court's decision in State v. Walters
(Dec. 11, 1998), 11th Dist. No. 97-T-0167, 1998 Ohio App. LEXIS 6006 in support of his position. In Walters this court found that the trial court's actions in not inquiring whether a criminal defendant would like to present evidence before finding the defendant guilty. However, this court noted that the court's actions did not "provide an exemplar in judicial temperament." Id, at 8. This statement could also describe the situation before us. However, as was the case in Walters, we do not consider the trial court's actions to constitute reversible error.
 {¶ 74} Elersic also cites State v. Gordon (Mar. 7, 1995), 10th Dist. No. 89AP-279, 1995 Ohio App. LEXIS 859 in support of his argument. However, Gordon case is readily distinguishable from the case sub judice. In Gordon, the trial court was repeatedly limiting the examination of witnesses and the closing arguments. The record also indicated that the judge was "`upset and irritated'" by the progress of the trial. Id, at 15. The trial court's actions in the case at bar are readily distinguishable from the improper actions of the trial court inState v. Gordon.
 {¶ 75} Elersic has not shown a clear indication that the trial court was biased. The trial court was merely controlling the trial. The trial court did not comment on the evidence or express his feelings as to the outcome of the trial. While the trial court might have been better suited to express its displeasure with the nature of defense counsel's question outside the presence of the jury, we do not view this as reversible error.
 {¶ 76} In addition, any possible harm that may have occurred during the above colloquy was cured by the trial court. While instructing the jury, the trial court gave the following curative instruction:
 {¶ 77} "If during the course of this trial I have said or done anything which you consider to be an indication of my view of the facts, please disregard that. The Judge must be and I sincerely desire to be impartial in presiding over this and every other trial before this Court whether with or without a jury.
 {¶ 78} "The judge does not have the right and I do not desire to invade the province of the jury by indicating in any way a preference between the state or the defendant. And I hope I have not done so at any time.
 {¶ 79} "You have observed at varying times during the trial that I have chastised one or another of the attorneys; that is a matter between me and the attorneys and should not reflect in any way my feelings in regards to the charges or in regards to the state of Ohio or the defendant, Shane Elersic.
 {¶ 80} "The fact that I may have determined that an attorney or the attorneys have violated a rule of procedure has no bearing on whether or not the defendant is guilty or not guilty of any of the charges in this case."
 {¶ 81} We do not see that Elersic was prejudiced by this exchange. Moreover, any prejudice that did occur was corrected by the trial court's curative instruction. Thus, Elersic's fifth assignment of error is without merit.
 {¶ 82} In his sixth assignment of error, Elersic argues that his conviction was against the manifest weight of the evidence.
 {¶ 83} The test for whether a criminal conviction runs counter to the weight of the evidence is as follows:
 {¶ 84} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Davis, supra, at 33, citing, State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 85} After reviewing the record, it is apparent that the verdict was entirely supported by the weight of the evidence. As such, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice such that Elersic's convictions and sentence must be reversed and a new trial ordered. Hence, appellant's sixth assignment of error is without merit.
 {¶ 86} Based on the foregoing analysis, Elersic's assignments of error are without merit and the judgment of the Geauga County Court of Common Pleas is therefore affirmed.
Judgment affirmed.
Judith A. Christley, J., concurs.
William M. O'Neill, J., Dissents with Dissenting opinion.
[1] See, State v. Elersic (Nov. 21, 2001), 11th Dist. Nos. 2000-L-062 and 2000-L-164, 2001 Ohio App. LEXIS 5210.
[2] Id.
[3] Elersic, supra.
[4] Fazzolare testified that, while in prison at the Lake Erie Correctional Center, he encountered Elersic. During this encounter, Fazzolare testified that Elersic, who was accompanied by "quite a few people," urged him to recant his Lake County testimony. Fazzolare agreed and drafted an affidavit contradicting his former testimony. During the Geauga County trial, Fazzolare testified that he cooperated with Elersic "because he wasn't going to end up dead in prison."
[5] See Judge Christley's concurring opinion in Elersic's Lake County appeal, supra.