JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Justin Prunty ("appellant"), appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part and reverse in part.
 I. {¶ 2} Appellant was indicted on two counts. Count one charged rape, in violation of R.C. 2907.02, and count two charged kidnapping, in violation of 2905.01, with a sexual motivation specification. Appellant was arraigned on January 9, 2006.
 {¶ 3} On March 6, 2006, appellant entered a plea of guilty to the indictment as charged. Appellant was referred for a presentence investigation. During the interim, appellant wrote a letter to the lower court offering an explanation for what happened on the date of the offense. On March 30, 2006, prior to sentencing, appellant made an oral motion to withdraw his plea. During a hearing on that matter, appellant offered another explanation for what occurred on the date of the offense. The court granted appellant's motion to withdraw his guilty plea, removed defense counsel, and recused itself.
 {¶ 4} New defense counsel was assigned, and the case was reassigned to another trial judge. A jury trial commenced on July 11, 2006, and on July 18, 2006, the jury returned a verdict of guilty on both counts. On August 31, 2006, a H.B. 180 hearing and a sentencing hearing was held. At the conclusions of those hearings, the court sentenced appellant to terms of imprisonment of ten years on count one and *Page 3 
five years on count two, each felonies of the first degree. Each term was to be served consecutive to one another for an aggregate sentence of fifteen years.
 {¶ 5} According to the record, on October 6, 2005, the victim, D.S., a fifteen-year-old girl, was working on her schoolwork at the Langston Hughes Public Library. The library is located at East 101st Street and Superior Avenue in Cleveland, Ohio. The victim was at the library from approximately 4:30 p.m. until 5:45 p.m. After completing her schoolwork, D.S. packed up her belongings and left for her home, which was located a few blocks away at East 87th Street and Superior Avenue. While leaving the library, D.S. noticed appellant walking across the street.
 {¶ 6} Appellant and D.S. had met earlier in August in a corner store in the neighborhood. On that day in August, appellant took D.S.'s name and number and told her his name. On October 6, 2005, when D.S. noticed appellant, she asked him if his name was Justin. Appellant recognized D.S. and remembered her name.
 {¶ 7} After walking for a while, appellant suggested that they go to the nearby park. Appellant directed the victim to a grassy area across the street and down a hill on East Boulevard, a short distance from the location where they currently were. After descending to the grassy park area, they continued to talk about a variety of issues. Appellant sat approximately one foot behind D.S. during their conversation and put his hand down D.S.'s shirt and underneath her bra. D.S. responded by *Page 4 
moving away. At that point, appellant directed D.S. to walk to a more secluded location inside Rockefeller Park.
 {¶ 8} On the bench, appellant pulled D.S. backwards and kissed her on the mouth. D.S. pulled away. D.S. then picked up her bag and attempted to leave to go home. Appellant stood in front of the victim and pushed her back down by her shoulders. The victim started crying and told appellant that she wanted to go home. Appellant told her that he would let her go home after she did what he told her to. Appellant then told the victim, "You're gonna give me head." D.S. told appellant, "I don't do that."[1] Appellant responded by pushing D.S. down by her neck and pulling out his penis.
 {¶ 9} Appellant then put his penis in D.S.'s mouth and forced her to perform oral sex. Appellant commanded D.S. to stop, began to masturbate, and ejaculated on D.S.'s face and mouth while she continued to cry. Appellant then wiped off D.S.'s mouth and told her he was sorry.[2]
 {¶ 10} When the two of them reached East 89th Street and Superior Avenue, they came across D.S.'s twin sister, C.S., and D.S.'s cousin, N.G., who had been looking for her after the victim's mother came home at 7:00 p.m. The victim appeared scared and shaken to C.S. and N.G. N.G. recognized appellant from *Page 5 
Martin Luther King High School. D.S. told them who appellant was and what just happened. Appellant responded that he told D.S. he was sorry and that he did not know why he did it.[3] Appellant then ran away.
 {¶ 11} D.S. told her mother what happened, and the police were called. The victim was taken to the hospital, and a sexual assault examination was performed by Dr. Nolan McMullen. Appellant was located and arrested. Detective Cottom took a buccal swab from appellant's mouth for a DNA comparison. A cutting from the victim's shirt taken at the time of her sexual assault examination at the Cleveland Clinic was proven to contain the sperm cells of appellant through DNA comparison.[4]
 {¶ 12} Appellant now appeals.
 II. {¶ 13} First assignment of error: "The trial court erred by abusing its discretion in granting appellee, State of Ohio's, motion in limine to exclude the introduction of evidence that appellant, Justin Prunty, resided in the state of Pennsylvania between August and November of 2005."
 {¶ 14} Second assignment of error: "The trial court erred by abusing its discretion in denying appellant, Justin Prunty's, motion in limine to exclude *Page 6 
statements made by appellant during his plea hearings which was subsequently withdrawn in violation of Rule 410 of the Ohio Rules of Evidence."
 {¶ 15} Third assignment of error: "The trial court violated defendant, Justin Prunty's, constitutional protection against double jeopardy by convicting him of and by ordering consecutive sentences for rape and kidnapping when these offenses were allied offenses of similar import pursuant to R.C. 2941.25."
 III. {¶ 16} Appellant argues in his first assignment of error that the lower court abused its discretion in granting appellee's motion in limine to exclude the introduction of testimony that appellant resided in the state of Pennsylvania from August 2005 through November 2005.
 {¶ 17} The state argues that appellant did not file a notice of alibi pursuant to Crim.R. 12.1, and that any testimony that would have indicated that appellant resided in Pennsylvania would be an attempt to circumvent the rule.
 {¶ 18} Crim.R. 12.1, Notice of Alibi, provides the following:
 "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted." (Emphasis added.) *Page 7 
 {¶ 19} In addition, R.C. 2945.58, Alibi, provides the following:
 "Whenever a defendant in a criminal cause proposes to offer in his defense, testimony to establish an alibi on his behalf, such defendant shall, not less than three days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to claim such alibi. Notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi."
 {¶ 20} Where a defendant did not file a notice of alibi pursuant to Crim.R. 12.1, a trial court was permitted to exclude the alibi testimony. State v. Elersic, Geauga App. Nos. 2001-G-2335 and 2003-G-2512, 2003-Ohio-7218.
 {¶ 21} Under Crim.R. 12.1, it is not error for the trial court to grant the state's motion to exclude defendant's notice of alibi and all testimony relating to alibi, where the notice was not filed at least seven days before trial and was impermissibly broad in that it did not give a specific address as to where defendant claimed he was at the time of the crime. State v. Russell (1985), 26 Ohio App.3d 185.
 {¶ 22} Crim.R. 16(C)(1)(c) requires that the defendant file a written witness list in response to a state request for discovery.[5] In the instant case, appellant failed to *Page 8 
file any notice of alibi or witness list prior to the day of trial. In fact, appellant did not notify the court of his intent to provide the information about residing in Pennsylvania until the second day of trial. Appellant, on the second day of trial, after entering and withdrawing a plea and after changing attorneys and being reassigned to another trial judge, attempted to introduce several undisclosed witnesses to testify to appellant's whereabouts at the time of the offense. The court disallowed those witnesses before trial and offered to hear further argument.[6]
 {¶ 23} Before the state called any witnesses, appellant again argued for the additional witnesses.[7] Again, the court ruled that it would not allow the witnesses for alibi purposes. However, the court indicated that it would consider allowing the witnesses for several other purposes, contemplated or otherwise.[8]
 THE COURT: "So I am not going to allow any alibi. I don't see any other relevance for the testimony. If you think the relevance would be to maybe impeach the credibility of a State's witness that is implying the Defendant fled at that point for purpose of showing that he did not flee, perhaps you could bring that in. We would have to see. * * *.
 "If it does not appear to be an alibi, I will allow the testimony. As it stands now, it only stands to common sense that [it] is an alibi. I don't *Page 9 
see it any other way. I don't see any other relevance to the testimony other than to indicate that he was out of state at and around the time of the attack."[9]
 {¶ 24} The record demonstrates that the lower court did allow defense counsel some leeway with the evidence. The trial court was willing to allow the testimony into evidence provided that it was not used as alibi evidence.
 {¶ 25} We find the actions of the lower court to be proper. Appellant failed to give any notice of such witnesses prior to trial. This is a violation of Crim.R. 16(C)(1)(c), case law, and R.C. 2945.58. Accordingly, we find that the lower court was well within its discretion in not allowing such testimony to be used. We find no error on the part of the lower court.
 {¶ 26} Accordingly, appellant's first assignment of error is overruled.
 {¶ 27} Appellant argues in his second assignment of error that the lower court abused its discretion in denying his motion to exclude statements made by him during his plea hearings.
 {¶ 28} Specifically, appellant argues that the lower court erred in regard to Evid.R. 410 when it allowed portions of appellant's plea withdrawal letter, presentence investigation, and plea hearing to be admitted into evidence.[10] *Page 10 
 {¶ 29} Evid.R. 410(A)(1) provides that a withdrawn plea of guilty is inadmissible. Rule 410(A)(4) provides that any statement made during proceedings under Crim.R. 11 regarding a plea is inadmissible. State v.Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853.
 {¶ 30} Appellant argues that three statements he made should have been excluded. The three statements include: (1) a voluntary letter written by appellant to the original trial judge prior to sentencing, (2) appellant's presentence investigation after his initial guilty plea made before his plea withdrawal hearing, and (3) statements at his hearing to withdraw his plea.
 {¶ 31} Appellant argues that all three statements should be considered statements made during plea discussions or pursuant to Crim.R. 11. However, all three statements were made after appellant's initial plea had been accepted.[11] These statements were not statements made during plea negotiations as contemplated by Evid.R. 410. These were statements of fact made after a plea had already been entered.
 {¶ 32} In addition, it is important to note that these statements were never introduced or preserved for the purpose of this appeal. Furthermore, the trial court *Page 11 
did make a preliminary ruling that any reference to a prior guilty plea must be excluded from any statements offered.
 {¶ 33} Accordingly, we find no abuse of discretion on the part of the lower court. The lower court was well within its discretion in ruling on the evidence.
 {¶ 34} Appellant's second assignment of error is overruled.
 {¶ 35} Appellant argues in his third assignment of error that the lower court violated his constitutional protection against double jeopardy by convicting him of rape and kidnapping when these offenses were allied offenses of similar import, pursuant to R.C. 2941.25.
 {¶ 36} When a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense.State v. Fears, 86 Ohio St.3d 329, 1999-Ohio-111.
 {¶ 37} Defendant may be convicted of both kidnapping and rape where the kidnapping was not merely incidental to the rape and the victim was subjected to prolonged restraint. State v. Brown (1984),12 Ohio St.3d 147.
 {¶ 38} In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B): (a) Where the restraint or movement of the victim is merely incidental to *Page 12 
a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions; (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions. State v. Logan (1979), 60 Ohio St.2d 126, 397
N.E.2d 1345.
 "Secret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense.
 "The primary issue, however, is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. In such circumstances, we cannot say that appellant had a separate animus to commit kidnapping.
 "We adopt the standard which would require an answer to the further question of whether the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. If such increased risk of harm is found, then the separate offense of kidnapping could well be found. For example, prolonged restraint in a bank vault to facilitate commission of a robbery could constitute kidnapping. In that case, the victim would be placed in substantial danger." (Emphasis added.) *Page 13 
Id. at 135.
 {¶ 39} In the case at bar, the state argues that the kidnapping occurred when appellant suggested that the victim accompany him to Rockefeller Park. It maintains that appellant "lured" the victim to Rockefeller Park in order to commit the rape.
 {¶ 40} The state's argument finds no support in the record because up until the time the rape occurred, the victim willingly accompanied appellant. The evidence demonstrates that the victim called to appellant on the street to inquire whether he was the person she had given her telephone number to several months previously. They engaged in conversation relating to dating, and the victim acknowledged that she wanted to know about different relationships he had in the past. They walked to a park and continued their conversation about dating. As they sat on the grass, appellant put his hands down her shirt and fondled her breasts. The victim moved slowly away from him but did not leave. When appellant then asked, "would you like to go sit down by the benches because the bugs [were], like, biting him," the victim knew that "bug biting" was a ruse to get her to move. She testified "[t]hat he probably want[ed] to do something, but I knew that I wasn't going to." In fact, she answered "yes" to the question, "[u]p until now you hadn't, but you had it in your mind that he might try something?"
 {¶ 41} The word "lure" is undefined in the Revised Code, so we give it its normal meaning as to tempt to do something or to go somewhere. Regardless what *Page 14 
appellant's motives were when he asked the victim to accompany him to Rockefeller Park, the victim testified that she voluntarily went with him despite knowing that "he might try something." She testified that she knew he "was probably going to try to kiss me or something, but nothing else." The victim's awareness that appellant might try something dispels any reasonable argument that she had been "lured" to Rockefeller Park.
 {¶ 42} Because the kidnapping was purely incidental to the rape, that offense was an allied offense of similar import. Appellant could not be convicted of both rape and kidnapping under the facts of this case. We, therefore, vacate appellant's conviction and sentence for kidnapping.
 {¶ 43} The evidence in this case demonstrates that appellant did not have any separate animus to commit kidnapping. Appellant's third assignment of error is sustained.
Judgment affirmed in part and reversed in part. Kidnapping conviction and sentence are vacated.
It is ordered that appellee and appellant share costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail *Page 15 
pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of
the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MELODY J. STEWART, J., CONCUR
[1] Tr. 362.
[2] Tr. 368.
[3] Tr. 373, 499.
[4] Tr. 551.
[5] "(C) Disclosure of evidence by the defendant. (1) Information subject to disclosure. (c) Witness names and addresses. If on request or motion the defendant obtains discovery under subsection (B)(1)(e), the court shall, upon motion of the prosecuting attorney, order the defendant to furnish the prosecuting attorney a list of the names and addresses of the witnesses he intends to call at the trial. Where a motion for discovery of the names and addresses of witnesses has been made by the prosecuting attorney, the defendant may move the court to perpetuate the testimony of such witnesses in a hearing before the court in which hearing the prosecuting attorney shall have the right of cross-examination. A record of the witness' testimony shall be made and shall be admissible at trial as part of the defendant's case in chief in the event the witness has become unavailable through no fault of the defendant."
[6] Tr. 39.
[7] Tr. 291.
[8] Tr. 291-295.
[9] Tr. 292-293.
[10] Rule 410. "INADMISSIBILITY OF PLEAS, OFFERS OF PLEAS, AND RELATED STATEMENTS. (A) * * * evidence of the following is not admissible in any civil or criminal proceeding against the defendant * * *: (1) A plea of guilty that later was withdrawn; (2) A plea of no contest * * *; (3) A plea of guilty in a violations bureau; (4) Any statement made in the course of any proceedings under Rule 11 * * *."
[11] Tr. 55-56.