[Cite as *State v. Mathes*, 2013-Ohio-1732.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2012-03-028 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 4/29/2013 |
| - vs - | : | |
| | : | |
| JAMES DAVID MATHES, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011 CR 0761

D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Paul Croushore, P.O. Box 75170, Cincinnati, Ohio 45275, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, James David Mathes, appeals his conviction in the Clermont County Court of Common Pleas for rape. For the reasons set forth below, we affirm the conviction.

{¶ 2} On August 31, 2011, Mathes was indicted for one count each of rape in violation of R.C. 2907.02(A)(2), unlawful restraint in violation of R.C. 2905.03(A), kidnapping, in violation of R.C. 2905.01(A)(4), and tampering with evidence in violation R.C.

2921.12(A)(1). These charges arose out of an incident that occurred on June 4, 2010. On that day, Mathes had been drinking beer since about 1:00 P.M. At about 7:00 P.M., A.C., a neighbor, came over to Mathes' house. A.C. was 14 years old at the time and was friends with Mathes' niece, Marisa, who lived with Mathes. A.C. had gone to the house to retrieve some clothes that Marisa had borrowed. Marisa was not home at the time, but Mathes was home. At trial, A.C. testified that she went into the home and into Marisa's room to get her clothes, and as she was walking to the front door to leave, Mathes grabbed her by the arm and pinned her down on the couch. A.C. testified that she protested, but Mathes pushed her down with his left arm and then with his right hand reached up her shorts and digitally penetrated her vagina. A.C. explained that by her estimation Mathes held her for three to five minutes. She eventually broke free from his grasp and ran home crying.

{¶ 3} Later that night, A.C. told her father that Mathes "touch[ed] her." A.C.'s father called the Union Township Police Department who came to the home and obtained a written statement from A.C. regarding the incident. Detective Keith Puckett then conducted a videotaped interviewed with A.C. and asked her to write a second statement. After speaking with A.C., Detective Puckett and a few other officers went to Mathes' home to speak to him about the allegations. Mathes agreed to go to the police station and be interviewed. During the interview, which was also recorded, Mathes denied having any contact with A.C. and agreed to provide DNA samples to the police. Detective Puckett scraped under Mathes' fingernails with wooden scrapers and collected nail clippings from Mathes for DNA analysis. Emily Draper, a chemist with the Ohio Bureau of Criminal Investigation, tested these samples and testified at trial that she found A.C.'s DNA on a swab from the scraper of Mathes' right hand fingernails and on the left hand fingernail scraper. Furthermore, she stated that the DNA on his fingernails produced more of A.C.'s DNA than Mathes' own DNA. She testified

- 2 -

that this strength of a profile was consistent with digital penetration of a mouth, vagina or anus.

{¶ 4} Mathes testified at trial on his own behalf. He maintained that he had no contact with A.C. and suggested that her DNA may have gotten on his fingernails due to his handling of her laundry. The jury ultimately found Mathes guilty of rape, kidnapping, and unlawful restraint, but not guilty of tampering with evidence. The trial court found that the three counts represented allied offenses of similar import, and the state elected to proceed on Count 1, rape, for sentencing. The trial court then designated Mathes as a Tier III Sex Offender/Child Victim Registrant and imposed a prison sentence of five years. Mathes timely appeals his conviction raising two assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED IN DENYING THE DEFENSE'S REQUEST TO PLAY THE VIDEO OF THE MINOR WITNESS A.C.'S INTERVIEW WITH THE POLICE TO SHOW HER INCONSISTENT STATEMENTS AND ODD DEMEANOR, AND IN FAILING TO MAKE A PROPER RECORD OF THE JURY QUESTION AS TO HER WRITTEN STATEMENTS.

{¶ 7} In his first assignment of error, Mathes argues the trial court erred in failing to admit into evidence three prior inconsistent statements of A.C. Mathes asserts that the trial court's decision not to admit A.C.'s prior inconsistent statements deprived him of the opportunity to effectively confront the witness with these inconsistencies.

{¶ 8} In general, the "trial court's decision to admit or exclude evidence will not be reversed by a reviewing court absent an abuse of discretion." *State v. Jackson*, 12th Dist. No. CA2011-01-001, 2011-Ohio-5593, ¶ 16. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 9} Mathes argues that A.C.'s two written statements and the videotaped interview should have been admitted into evidence, as these three statements were admissible pursuant to Evid.R. 613(B). Evid.R. 613(B) states, in part, that extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:
>
> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness
>
> (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);
>
> (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶ 10} Thus, under Evid.R. 613(B), a party may introduce extrinsic evidence of a prior inconsistent statement to impeach the witness's credibility. In order to introduce the prior inconsistent statement into evidence, proper foundation must be laid. *State v. Lewis*, 12th Dist. CA2010-08-017, 2011-Ohio-415, ¶ 30, citing *State v. Mack*, 73 Ohio St.3d 502, 514-515 (1995). A proper foundation is laid where the witness denies making the prior statement. *State v. Hartman*, 12th Dist. No. CA98-06-040, 1999 WL 188145, *6 (April 5, 1999), citing *State v. Colvin*, 12th Dist. No. CA94-04-092, 1995 WL 103235, *4 (March 13, 1995). However, if a witness admits to making the prior inconsistent statement then extrinsic evidence is not admissible. *Id.*; *State v. Kulasa*, 10th Dist. 11AP-826, 2012-Ohio-6021, ¶ 12.

{¶ 11} Prior to being presented with the two written statements, A.C. admitted during direct examination that she initially told the police that the incident occurred outside on a picnic table but later changed her story and said that it actually occurred inside the home on

- 4 -

a couch. A.C. explained that, "when I was writing everything down, I was scared, and I was nervous, so I just kind of wrote really, really fast to get it over with." During cross-examination of A.C., Mathes presented A.C. with copies of the two statements. Mathes thoroughly cross-examined A.C. regarding inconsistent facts between each statement, such as her purpose for going over to the Mathes' residence, the location where the assault occurred, and whether Mathes grabbed her from behind or pulled her arms up. When confronted with each of these inconsistencies, A.C admitted that the statements were inconsistent but explained that she was "confused" and "scared" that night. As to the videotaped interview, initially, A.C. testified that she could not remember what she told Detective Puckett during the interview. However, later during cross-examination, A.C. admitted to telling Detective Puckett during this interview that she was not "being completely truthful" as the incident occurred in the house and not in the backyard as she originally told him. A.C. explained that the reason she said it occurred in the backyard was because she "was scared to say that I went into the house, because I thought it would make me look bad." A.C. further testified that although there were differences in the details of the assault in her trial testimony and those contained in her statements, the way in which she testified at trial was what "really happened." Based on this testimony, A.C. admitted to making the prior inconsistent statements and accordingly the two written statements and the videotaped interview were not admissible under Evid.R. 613(B).

{¶ 12} Mathes asserts that the videotaped interview should at least been played for the jury because it showed her "odd demeanor" and "contrary behavior." After a review of the record, it appears that defense counsel failed to specifically question A.C. as to her conduct during the interview, but rather focused on her inconsistent statements. Furthermore, defense counsel could have questioned Detective Puckett as to A.C.'s demeanor during the interview to establish her inconsistent conduct. However, defense counsel failed to ask about this and focused on A.C.'s inconsistencies in her statements. As

- 5 -

detailed above, because A.C. admitted to making inconsistent statements, the written statements and the videotaped interview were inadmissible under Evid.R. 613(B). Accordingly, we reject Mathes' argument and find that the trial court did not abuse its discretion in excluding A.C.'s three prior statements.

{¶ 13} Mathes also argues in his first assignment of error that the trial court erred in failing to provide the jury with copies of A.C.'s written statements when requested by the jury. Generally, if, "during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." *State v. Baker*, 12th Dist. No. CA2007-09-018, 2008-Ohio-5544, ¶ 32, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). Thus, in response to a question from the jury, it is within the sound discretion of the trial court to provide supplemental instructions or to refer the jury to instructions already provided. *Id.*

{¶ 14} We first note that trial counsel waived placing the proceedings on the record as to the question posed by the jury. However, appellate counsel properly filed a request pursuant to App.R. 9(C) to supplement the record with a statement of evidence. *See State v. Hileman*, 12th Dist. No. CA96-10-219, 1998 WL 161386, *1 (Apr. 6, 1998). The statement of evidence does not indicate that Mathes objected to the question or the answer provided to the jury. As there was no objection at trial, Mathes has waived all but plain error. Crim.R. 52. An alleged error is plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 53 (12th Dist.), citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108. A finding of harmless error, however, is appropriate where there is "overwhelming evidence of guilt" or "some other indicia that the error did not contribute to the conviction." *State v. Sims*, 12th Dist. No. CA2007-11-300, 2009-Ohio-550, ¶ 34, quoting *State v. Ferguson*, 5 Ohio St.3d 160, (1983), fn. 5. According to the statement of evidence, during

jury deliberations the jury asked: "Can we have [A.C.'s written statements[?]" Defense counsel agreed to the court's answer that "the evidence before [the jury] is what has been admitted, and [the court] cannot produce evidence which is not admitted."

{¶ 15} After reviewing the record, we cannot say that the trial court's failure to provide the jury with A.C.'s written statements represented error let alone plain error. As discussed above, the trial court properly denied admission of A.C.'s statements as extrinsic evidence pursuant to Evid.R. 613(B). Accordingly, as the statements were not admitted into evidence, the jury was not entitled to view them during deliberations. *See* R.C. 2945.35; *State v. Graven*, 52 Ohio St.2d 112, 113 (1977) (finding that evidence which has been ruled inadmissible is excluded from the jury room.).

{¶ 16} Mathes' first assignment of error is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT A MISTRIAL AND DISCHARGE THE JURY WHERE THE OFFICER TESTIFIED THAT MATHES REQUESTED AN ATTORNEY.

{¶ 19} In his second assignment of error, Mathes asserts the jury was improperly permitted to hear testimony that he "requested an attorney." Essentially, Mathes contends that his request for counsel was used as substantive evidence of guilt which violated his due process rights requiring the trial court to grant a mistrial.

{¶ 20} The state played a video of Mathes' interview during Detective Puckett's testimony. During this interview, Mathes asked Detective Puckett, "[s]hould I get a lawyer." Once the videotape concluded, Detective Puckett explained the process he used to obtain nail clippings from Mathes to test for DNA. Detective Puckett explained that he started opening the package of nail clippers in order to obtain the clippings but "then [Mathes]

- 7 -

requested an attorney." So he placed the clippers back into their packages until he received a search warrant for the clippings. It is this testimony that Mathes claims prejudiced him.

{¶ 21} We first note that there was no objection to Detective Puckett's comment or to the video. In fact during a side bar conference, defense counsel specifically agreed to "play the whole" video. Accordingly, as there was no objection, Mathes has waived all but plain error. Crim.R. 52(B).

{¶ 22} After a review of the record, we find that even if it was error for Detective Puckett to testify regarding Mathes' request for an attorney, such testimony did not contribute to Mathes' conviction. Here, the state presented overwhelming evidence of Mathes' guilt. The victim provided a detailed description as to the manner in which Mathes sexually assaulted her. Although there were some differences in the details of the assault, A.C. consistently stated that Mathes digitally penetrated her. The DNA evidence was overwhelming and corroborated A.C.'s account of her encounter with Mathes. The state presented evidence that A.C.'s DNA was found on the swab from Mathes' left hand fingernail scraper and the swab from the right hand fingernail scraper. In fact, Draper testified that "A.C. was the major source of DNA here" such that that there was more DNA "from [A.C.] than from Mr. Mathes himself." Draper further testified that the amount of A.C.'s DNA found on the nail scrapings was consistent with "something like a vaginal or anal penetration or even oral penetration" and not casual contact. Accordingly, any error the trial court made in allowing testimony regarding Mathes' request for counsel was, at best, harmless error.

{¶ 23} Moreover, we note that during defense counsel's re-direct examination of Mathes, counsel specifically questioned Mathes regarding his discussion with Detective Puckett about obtaining a lawyer. "Appellant cannot, on appeal, complain that the trial court erred in permitting the admission of prejudicial testimony which he elicited from the witness. The rule of invited error prohibits a party who induces error in the trial court from taking

advantage of such error on appeal." *State v. Williams*, 12th Dist. No. CA2006-03-067, 2007-Ohio-2699, ¶ 27.

{¶ 24} As a result, we find appellant has not shown that the outcome of the trial would have been different without the admission of the statements at issue. Mathes' second and final assignment of error is therefore overruled.

{¶ 25} Judgment affirmed.


HENDRICKSON, P.J. and PIPER, J., concur.