[Cite as *State v. Hampton*, 2019-Ohio-2555.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

     Plaintiff-Appellee

-vs-

AARON A. HAMPTON

     Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2018 CA 00123

O P I N I O N


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
Pleas, Case No. 2018 CR 00758


JUDGMENT:        Affirmed


DATE OF JUDGMENT ENTRY:        June 25, 2019


APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
KRISTINE W. BEARD
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702

For Defendant-Appellant

BERNARD L. HUNT
2395 McGinty Road, NW
North Canton, Ohio 44720

*Wise, J.*

**{¶1}** Defendant-Appellant Aaron A. Hampton appeals from his felony conviction, in the Court of Common Pleas, Stark County, on one count of domestic violence. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}** On April 14, 2018, Officer Jennifer Henderson of the Canton Police Department was dispatched to a Gas City gas station located at 216 Roland Avenue NE. She thereupon took a report that appellant's girlfriend, R.P., had been physically assaulted. Shortly thereafter, the officer interviewed R.P. at Mercy Hospital.

**{¶3}** On April 17, 2018, appellant was arrested, and on the next day appeared in the Canton Municipal Court with appointed counsel for arraignment. At that time, he entered a plea of not guilty. He was also advised that the municipal court had issued a no contact order regarding R.P.

**{¶4}** Following a preliminary hearing in the municipal court on April 26, 2018, appellant was bound over to the Stark County Court of Common Pleas (hereinafter "trial court").

**{¶5}** On or about May 31, 2018, the matter was presented to the Stark County Grand Jury. The victim, R.P., appeared and testified at that time. Appellant was thereupon indicted on one count of domestic violence, R.C. 2919.25(A), with two or more prior convictions, a third-degree felony.

**{¶6}** The trial court subsequently set the case for a final pretrial on June 20, 2018, with a trial date of July 3, 2018.

{¶7} On June 22, 2018, in violation of the aforementioned no contact order, appellant called R.P. via telephone from the Stark County Jail. The phone call was recorded and saved by the Sheriff's Office.

{¶8} On June 29, 2018, the State filed a notice of intent to use evidence (citing Evid.R. 804(B)(6)) and a motion to continue the scheduled July 3rd trial. On July 2, 2018, the trial court filed a hearing disposition sheet indicating that the trial would be continued, with an entry to that effect to follow.

{¶9} On July 3, 2018, the court held a hearing on the State's aforesaid motions. The State maintained that a continuance was necessary based on newly discovered evidence, including appellant's jail phone call to R.P. on June 22, 2018, which likely made the victim unavailable for trial, and certain records from Mercy Medical Center which included photos and the name of a potential witness. Reference was also made to a police bodycam video of the statements made by R.P. to law enforcement at Mercy Medical Center, although a copy thereof had been apparently received by defense counsel previously. *See* Discovery Receipt, June 13, 2018 (Docket Number 13). Over defense counsel's objection, the State's request for a continuance was granted, and the jury trial was re-set for July 17, 2018.

{¶10} On July 16, 2018, appellant filed a motion to dismiss on speedy trial grounds, which was denied. *See* Tr. at 27.

{¶11} The State called two witnesses on July 17, 2018: Officer Henderson of the Canton Police Department and Deputy Mark Hood of the Stark County Sheriff's Department. The victim, R.P., did not show up for the trial.

**{¶12}** Officer Henderson recalled that when she arrived at Gas City on the afternoon of April 14, 2018, she learned that R.P. had already been taken to Mercy Medical Center. Tr. at 164. The officer conducted some of her investigation at the scene, and then proceeded to Mercy, about ten minutes away. *Id.* Speaking with R.P. at the hospital, Henderson observed that R.P. was "extremely shaken" and crying. *Id.* She was also, at least initially, "hard to understand because of being upset." *Id.* R.P. displayed signs of physical injury in the form of dried blood on her lip, visible red marks on her neck, and scraping to one of her knees. Tr. at 167-168. After more investigation, Henderson "learned that [appellant] and the victim had resided together at the victim's address." Tr. at 169. The conversation between Henderson and R.P. was captured on the officer's bodycam.

**{¶13}** The remaining witness called by the State, Deputy Hood, who is assigned to the inmate services unit, testified that appellant had called R.P. from a jail telephone on the afternoon of June 22, 2018. The audio of the call was then played for the jury over appellant's objection. Tr. at 210.

**{¶14}** During the jail call, R.P. can be heard telling appellant that she wanted to come to the trial just to have an opportunity to see him at the courthouse. Appellant then told R.P. that if she does not show up for the trial, he won't have to "fight" the charge and she would be able to see him. R.P. then stated her intention not to show up for trial. State's Exhibit 4 (played for the jury at Tr. 211).

**{¶15}** After the presentation of the State's evidence, appellant made a Crim.R. 29 motion for acquittal, essentially arguing that the State had not proven that appellant was

a "family or household member" for purposes of the domestic violence statute. Said motion was overruled by the trial court. Tr. at 215-216.

**{¶16}** The jury thereafter deliberated and found appellant guilty as charged in the indictment.

**{¶17}** The trial court, following a hearing on July 23, 2018, sentenced appellant *inter alia* to 36 months in prison.

**{¶18}** On August 20, 2018, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

**{¶19}** "I. THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHT UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION IN SECTION 10, ARTICLE I.

**{¶20}** "II. THE TRIAL COURT'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶21}** "III. THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S RULE 29(A) MOTION TO DISMISS."

I.

**{¶22}** In his First Assignment of Error, appellant contends the trial court violated appellant's rights under the Sixth Amendment and the Ohio Constitution, Section 10, Article I. We disagree.

**{¶23}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802.

Our standard task is to look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman,* 5th Dist. Stark No. 1999CA00027, 2000 WL 222190.

**{¶24}** The text of the present assigned error indicates appellant is claiming a violation of his constitutional right to confront witnesses. However, his argument is chiefly focused on hearsay issues, particularly Evid.R. 804(B)(6), *infra*. We initially note that issues concerning the Confrontation Clause and the application of hearsay exceptions are separate and distinct considerations. *See State v. Love,* 4th Dist. Gallia No. 10CA7, 2011–Ohio–4147, ¶ 23. However, in the interest of justice, we will address both of these facets of appellant's present assigned error. *See State v. Evans*, 5th Dist. Stark No. 2014 CA 00167, 2015-Ohio-1788, ¶ 33.

<u>*Confrontation Issues*</u>

**{¶25}** The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." *State v. Anderson,* 154 Ohio App.3d 789, 2003–Ohio–5439, 798 N.E.2d 1155, ¶ 22 (7th Dist.). Furthermore, the Ohio Constitution, Article I, Section 10, states in pertinent part: "*** In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face ***."

**{¶26}** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held testimonial statements of a witness who

does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant had a prior opportunity for cross-examination. *State v. Garrison*, 5th Dist. Muskingum No. CT2017-0034, 2018-Ohio-1048, ¶ 13.

**{¶27}** Officer Henderson's testimony:  Appellant first challenges the following recollection provided at trial by Officer Henderson, concerning what R.P. (who did not appear at appellant's trial) reported to her at the hospital:

*** [R.P.] was in an altercation with her boyfriend [Appellant Hampton], they were at a barbeque, they were leaving to go to another address, and she states she didn't want to go. And during this they're in a car with an unknown person. Unknown person tells them to get out. She states that Mr. Hampton grabbed her by the neck, punched her with a closed fist multiple times causing her to fall down on the railroad tracks, *** [and she] went to Gas City to make the phone call to get help.

**{¶28}** Tr. at 173-174.

**{¶29}** Even when confrontation rights apply, testimonial hearsay can be admitted under the common law "forfeiture by wrongdoing" exception. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 108, citing *Giles v. California*, 554 U.S. 353, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008). The doctrine applies when the defendant engaged in conduct designed (with intent) to prevent the witness from testifying. *Id.* In essence, defendants forfeit the right to confrontation if they "seek to undermine the judicial process by procuring or coercing silence from witnesses * * *." *Davis v. Washington*, 547

U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). *See State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 34.

**{¶30}** In the case *sub judice*, although the victim, R.P., was initially cooperative and testified before the grand jury, she eventually refused to talk with prosecutors, did not respond to letters, and did not honor her subpoena. As further detailed *infra*, about one week before the original trial date, despite an existing no-contact order, appellant initiated a jail phone call to R.P., during which he told her that if she did not come to the trial, he would not have to fight the charge and he would be able to see her.

**{¶31}** Upon review, we hold the trial court acted within its discretion in permitting R.P.'s statements to be admitted under the doctrine of forfeiture by wrongdoing, as the record supports a conclusion that appellant was intentionally seeking to disrupt R.P.'s availability as a witness.

**{¶32}** Footage from Officer Henderson's police bodycam: During appellant's trial, the State chose not to play Officer Henderson's bodycam, and instead called the officer to testify. However, in this instance, appellant's defense counsel chose to have approximately four minutes of the bodycam video shown to the jury as a part of the defense cross-examination of Officer Henderson. *See* Tr. at 202. Where a defense attorney agrees to play a video, it is treated as if there was no objection, and the defendant waives all but plain error on appeal. *See State v. Mathes*, 12th Dist. Clermont No. CA2012-03-028, 2013-Ohio-1732, ¶ 21, citing Crim.R. 52(B). Furthermore, we find the "forfeiture by wrongdoing" exception to the right to confront witnesses would again apply.

**{¶33}** Accordingly, we find no reversible error concerning the use of the bodycam video in this regard.

**{¶34}** Audio recording of the jail phone call: Stark County Deputy Mark Hood testified for the prosecution that he handles inmate services at the Stark County Jail. He noted that phone calls made from the jail are stored in Sheriff Department records. Tr. at 207-208. After the deputy identified a jail call made by appellant on June 22, 2018 at 4:21 PM, a recording of the call was played for the jury, over defense objection. Tr. at 211. In the call, appellant urges R.P. not to appear for the trial. *Id.*

**{¶35}** When statements are made for the primary purpose of communicating with friends or family, they are not made to aid in the prosecution or as the result of an interrogation. *See State v. Ray,* 189 Ohio App.3d 292, 2010–Ohio–2348, 938 N.E.2d 378 (8th Dist.), ¶¶ 42–43. Specifically, recorded jail calls are not "testimonial" for confrontation purposes if the primary purpose of the calls is to further a conspiracy, rather than create a record for a criminal prosecution. *United States v. Mayfield*, 909 F.3d 956, 962 (8th Cir.2018), citing *United States v. LeBeau*, 867 F.3d 960, 981 (8th Cir. 2017). In the instant case, although appellant was not charged with conspiracy, the trial court could have reasonably determined that appellant was attempting to regain a relationship with R.P. and reach a pact to subvert her testimony. Under these circumstances, we find no confrontation violation and no abuse of discretion by the trial court in allowing the call to be played for the jury.

### *Hearsay Issues*

**{¶36}** Officer Henderson's testimony / Footage from Officer Henderson's police bodycam: In the context of a hearsay analysis, we note that under Evid.R. 804(B)(6), the forfeiture by wrongdoing hearsay exception permits the admission of "[a] statement offered against a party if the unavailability of the witness is due to the wrongdoing of the

party for the purpose of preventing the witness from attending or testifying." In this situation, the State need only show the defendant's wrongdoing which caused the witness's unavailability was motivated in part by a desire to silence the witness. *State v. Austin*, *supra*, at ¶ 36. Similar to our conclusions *supra*, we hold the trial court acted within its discretion in allowing R.P.'s statements to be admitted as a hearsay exception under the doctrine of forfeiture by wrongdoing.

{¶37} Furthermore, given that R.P. spoke to the officer while she was being treated at the hospital and was visibly shaken and upset, we find the "excited utterance" exception to hearsay would have justified the trial court's allowance of R.P's out-of-court statements. *See* Evid.R. 803(2).

{¶38} Audio recording of the jail phone call: Appellant does not indicate in his argument that R.P. made any statements during the jail call tending to incriminate appellant; we therefore presume appellant is referring to his own statements on the recording. However, a defendant's suggestion to a witness during a jail call that she should not come to court can constitute an admission of a party opponent, which is not hearsay under Evid.R. 801(D)(2) and is admissible as substantive evidence of guilt. *See State v. Moody,* 2nd Dist. Montgomery No. 26926, 2016-Ohio-8366, ¶ 68.

{¶39} We therefore find no abuse of discretion by the trial court on hearsay grounds in allowing the call to be played for the jury.

{¶40} Appellant's First Assignment of Error is overruled.

II.

**{¶41}** In his Second Assignment of Error, appellant contends his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

*Sufficiency Claim*

**{¶42}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010–Ohio–15, 2010 WL 27862, ¶ 11.

**{¶43}** R.C. 2919.25(A) states as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶44}** Pursuant to R.C. 2919.25(F)(1)(a)(i), the definition of "family or household member" includes "[a]ny of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(F)(2) in turn defines a person living as a spouse as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

**{¶45}** The gist of appellant's sufficiency claim in the case *sub judice* is that the State failed to prove he was a family or household member in regard to the victim, R.P.

**{¶46}** Officer Henderson testified at trial that she learned appellant and R.P. had resided together at R.P's address, although the State was unable to procure a more specific follow-up answer as to a time frame, due to defense counsel's successful objection. *See* Tr. at 170-171. However, on the jail call recording, appellant can be heard telling R.P. that if she does not testify against him, she will be able to see him "for good." State's Exhibit 4.[1] Also, on Officer Henderson's bodycam video, R.P. appears to say that appellant had "stayed" with her, but had recently been banned from her building. State's Exhibit 1 (N/O).

**{¶47}** Upon review of the record and transcript in a light most favorable to the prosecution, we find that rational factfinders could have determined the existence of a household member relationship and thus found appellant guilty beyond a reasonable doubt of the offense of domestic violence against R.P. as charged.

## Manifest Weight

**{¶48}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

---

[1] The State presently asserts that appellant says during the call that he "can come home" if R.P. refuses to testify. Appellee's Brief at 11, 22. However, we cannot ascertain that phrase upon listening to the jail call recording exhibit.

*See, also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶49}** Appellant's argument focuses on his claim that police investigative functions were not adequately performed in this instance. He maintains that Officer Henderson did not investigate if appellant or R.P. had been drinking (Tr. at 176), and that no interview was conducted of the persons who were allegedly giving appellant and R.P. a ride on the night of the assault (Tr. at 177). Appellant also faults investigators for not checking the railroad tracks for DNA evidence (Tr. at 179) [2] or doing a "follow-up" at the 1717 E. Tuscarawas address (Tr. at 195), the purported destination of appellant and R.P. on the date of the assault. Appellant also claims the police bodycam video showing R.P. does not show significant physical injury, and, without significant elaboration, claims Officer Henderson's testimony was confusing and/or inconsistent with the video.

**{¶50}** Even though a manifest weight analysis may involve an appellate court's consideration of credibility (*see State v. Sanders*, 76 N.E.3d 468, 2016-Ohio-7204 (5th Dist.), ¶ 38), the weight to be given to the evidence and the credibility of the witnesses are primarily issues for the trier of fact (*see*, *e.g., State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180). Furthermore, even if demonstrated, a substandard police investigation generally "has no bearing on the question of the manifest weight of the evidence," so long as the evidence that is presented is sufficient to sustain the verdict. *See State v. Keyser*, 11th Dist. Portage No. 95-P-0136, 1996 WL 635842.

---

[2] R.P. at one point told police that she had struck her head on some nearby railroad tracks during or as a result of the assault.

**{¶51}** Therefore, having reviewed the record under the standard of *Martin*, we find no demonstration that appellant's conviction must be reversed and a new trial ordered.

**{¶52}** Appellant's Second Assignment of Error is overruled.

III.

**{¶53}** In his Third Assignment of Error, although referencing Crim.R. 29, appellant challenges the trial court's denial of his statutory speedy trial motion to dismiss.

**{¶54}** The right to a speedy trial is encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd* (1978), 56 Ohio St.2d 197, 383 N.E.2d 579; *State v. Pachay* (1980), 64 Ohio St.2d 218, 416 N.E.2d 589. Ohio's Speedy Trial statute codifies the constitutional guarantee of a speedy trial. *Pachay, supra.*

**{¶55}** Our review of a trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. McDonald,* 7th Dist. Mahoning Nos. 97CA146 and 97CA148, 1999 WL 476253. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. *Id.* However, we must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. *Id.,* citing *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 57, 661 N.E.2d 706.

**{¶56}** R.C. 2945.71(C)(2) mandates that a person against whom a felony charge is pending shall be brought to trial within two-hundred and seventy days after the person's

arrest. However, "* * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

**{¶57}** Furthermore, R.C. 2945.72 states in pertinent part as follows:

The time within which an accused must be brought to trial, or, in the case of [a] felony, to preliminary hearing and trial, may be extended only by the following: *** (D) Any period of delay occasioned by the neglect or *improper act of the accused*; *** (H) The period of any continuance granted on the accused's own motion, and the period of *any reasonable continuance granted other than upon the accused's own motion*; ***.

**{¶58}** (Emphases added).

**{¶59}** In the case *sub judice,* appellant was arrested on April 17, 2018, and he remained incarcerated until his trial commenced. Thus, absent any extensions, the ninety-day deadline established under R.C. 2945.71(C)(2) and (E), *supra,* would have occurred on July 16, 2018.

**{¶60}** The trial was initially scheduled for July 3, 2018, well within the limit. But on June 29, 2018, the State filed a motion for a continuance and a notice of intent to use evidence, based on the doctrine of forfeiture by wrongdoing. In both motions, and at a pretrial hearing on July 3, 2018, the State advised the trial court that on June 22, 2018, during the aforementioned jail call initiated by appellant, he told R.P. not to appear for trial, and that she had agreed to this. The State thus moved the court for a continuance in part to try to compel R.P.'s appearance and/or for the court to determine whether R.P.'s out-of-court statements could be presented in her absence. The State also advised that they had received recent notice of newly discovered evidence of medical photos. Finally,

the State indicated that preparation time would be needed regarding the jail call's introduction at trial.

**{¶61}** On July 2, 2018, in a hearing entry, the court indicated that it would grant the motion to continue with an entry to follow. Via a judgment entry issued on July 16, 2018, the court granted the State's motion to continue. The trial then commenced on July 17, 2018.

**{¶62}** Under the circumstances presented, we hold the trial court's continuance of the trial date for one more day past the 90-day triple-count speedy trial deadline was reasonable and valid, and the additional tolling period did not constitute error or deprive appellant of his constitutional rights.

**{¶63}** Accordingly, the trial court did not err in denying appellant's statutory speedy trial motion to dismiss.

**{¶64}** Appellant's Third Assignment of Error is overruled.

**{¶65}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0530