[Cite as *State v. Womack*, 2020-Ohio-574.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                       No. 108422

    v.                                   :

BRIAN WOMACK,                          :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622194-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Timothy R. Troup and Eben McNair, Assistant Prosecuting Attorneys, *for appellee.*

Buckeye Law Office, and P. Andrew Baker, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Brian Womack, appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of aggravated robbery, robbery, and kidnapping, and sentencing him to an aggregate prison term of ten years. Finding no merit to the appeal, we affirm.

## I.  Background and Trial Testimony

{¶ 2}  Womack was indicted in a six-count indictment with two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of robbery in violation of R.C. 2911.02(A)(2), and two counts of kidnapping in violation of R.C. 2905.01(A)(2).  Each count contained one- and three-year firearm specifications.  Womack pleaded not guilty and waived his right to a jury trial.

{¶ 3}  The charges arose out of a carjacking that occurred on October 5, 2017.  Thomas Kander testified that at approximately 7:30 p.m. that evening, he had just parked his silver 2015 Hyundai Sonata on the west side of East 185th Street, across from the Blue Parrot bar in Euclid.  Kander said that just as he and his girlfriend, Yvonne Leduc, were getting out of the car, a black male approached him, put a gun to his chest, and told him to "give me your keys."  Kander said the robber was only eight to ten inches away from him.  Kander said he looked down at the gun, looked up at the individual who was pointing the gun at him, and then gave him his keys.  Kander then yelled at Leduc to run away, which she did.

{¶ 4}  Kander testified that after he gave the robber his keys, he ran across the street to the Blue Parrot, and then turned around and saw the robber and four juveniles getting into his car.  Kander said that his car is started by a button instead of a key, and the robber, who was in the driver's seat, took a few minutes to figure out how to get the car started.  Kander said that it was still a little light out when the carjacking occurred, and he saw the robber's face.  He said the robber was wearing

a blue hoodie but the hood was pulled up loosely around the robber's face, and he got a "clear look" at his face.

**{¶ 5}** Leduc testified that as she and Kander parked across from the Blue Parrot, she saw five males sitting on a nearby bench. She said that as she and Kander were getting out of their parked car, the five males approached, and one told Kander, "I have a gun; give me your keys." Kander complied and then told her to run. Leduc ran to the corner and then around to the back of the Blue Parrot, where she called the police. Leduc testified that her silver ice bucket and a bag of her clothes were in the car when it was carjacked and were never recovered.

**{¶ 6}** Euclid police officer Matthew Leyde responded to the scene and took a statement from Kander. The next day, Euclid police detective Michael Caruso spoke with Kander at the police station. He created a photo array of possible suspects, and Kander identified Womack from the photo array with "100 percent certainty" as the individual who had carjacked him the night before.

**{¶ 7}** Euclid police officer Gregory Drew testified that on the morning of October 6, 2017, he was patrolling in a marked car in the area of East 156th Street and Parkgrove Avenue in Cleveland, looking for Kander's stolen car. He said that as he drove past Trafalgar Avenue, a silver car driven by a black male turned onto East 156th Street. Drew said he and the driver "sort of glanced at each other as he turned." Drew said he turned around to follow the silver car and saw it "take off at a high rate of speed." Drew followed the car, and saw it eventually hit a curb and come to a stop. The driver's side door of the car opened, and the driver got out and

ran away. At the scene, several people reported to Drew that the driver had jumped over a nearby fence. Drew secured the car and after checking the car's VIN number, learned it belonged to Kander.

{¶ 8} Euclid police officer Daniel Ferritto testified that he responded to the area of East 156th Street and Parkgrove Avenue after hearing a radio report that a car taken in an armed carjacking had been located and the driver had fled. Officer Ferritto said that after he called for backup and the K-9 unit, he spoke with a resident who told him that a tall black male had come into his house and then fled to his detached garage. Officer Ferritto checked the garage, but the male was no longer there.

{¶ 9} In the meantime, Euclid police officer Joseph Parkin and a K-9 officer were searching the backyards of houses in the area. Officer Parkin testified that the dog alerted to a scent in one of the yards, and when he looked over, he saw an individual crouched down in the backyard of a house a few doors down. The male, who was wearing a white shirt and black pants, started running away. Officer Ferritto saw the suspect emerge from the back of a house, ran after him, and eventually apprehended him.

{¶ 10} Euclid police officer Michael Neibecker testified that he also responded to the scene to look for the carjacking suspect. After the suspect, later identified as Womack, was arrested, Officer Neibecker took photographs of the car, a blue hoodie found in the detached garage of the resident who encountered

Womack, and a baseball cap found on the ground near the fence Womack had jumped over.

{¶ 11} Detective Caruso testified that after the car was recovered, it was taken to the police department processing garage, where it was swabbed for fingerprints and DNA. Several items were also collected from the car and submitted to the Bureau of Criminal Investigation ("BCI") for analysis.

{¶ 12} Stacy Violi, a DNA forensic scientist at BCI, testified that DNA samples from Womack and Kander, as well as other pieces of evidence, were submitted to BCI for analysis. She testified that Womack's DNA was found on the interior driver's side door handle, the steering wheel, and the gear shift of the recovered car, as well as on a hairbrush and water bottle found in the car. Womack stipulated that his fingerprint was found on the interior windshield on the passenger side of the car.

{¶ 13} Detective Caruso testified that he interviewed Womack several hours after his arrest. Caruso said that Womack admitted that the baseball cap and blue hoodie found by the police were his. He denied, however, that he had stolen the car and said that he had traded $100 worth of marijuana for the car from a man named "Tee." State's exhibit No. 45, a video recording of Caruso's interview with Womack, was played at trial. In the interview, Womack repeatedly denied that he was involved in the robbery and gave multiple versions of events relating to how he came to be in possession of the car.

{¶ 14} The trial court denied Womack's Crim.R. 29(A) motion for acquittal, and Womack then testified in his defense. He testified that he does not own a gun and was not involved in the carjacking. He admitted that his statement to Detective Caruso that he got the car from Tee in exchange for marijuana was not true. He said that he actually got the car from his half-brother Jonathon Roebuck, whom Womack said is tall and looks like him. Womack admitted that he never told Detective Caruso that he got the car from his brother, but said he gave Detective Caruso multiple versions of events involving the car, none of which was true, because he wanted to protect his brother. Womack agreed that the blue hoodie found by the police in the detached garage belonged to him, and testified that he "changed out" of the blue hoodie into a white shirt when he exited the stolen car "because they were looking for somebody with a blue sweatshirt on."

{¶ 15} State's exhibit No. 70, a recording of Womack's jail call with his mother, was played at trial over defense counsel's objection. In the call, Womack told his mother that he lied to the police regarding how he got the car and that after watching the video of interview with Detective Caruso in court, he realized his different versions did not sound credible.

{¶ 16} The trial court found Womack guilty of all charges, including the firearm specifications. Counts 1, 2, and 3, aggravated robbery, robbery, and kidnapping respectively, related to the offenses against Kander. The court merged Counts 2 and 3 with Count 1, and sentenced Womack to four years on Count 1. Counts 4, 5, and 6, aggravated robbery, robbery, and kidnapping respectively,

related to the offenses against Leduc. The court merged Counts 5 and 6 into Count 4, and sentenced Womack to four years on Count 4. The court ordered that the sentences on Counts 1 and 4 be served concurrently, but consecutively to three-year terms on the firearm specifications for each of Counts 1 and 4, for an aggregate prison term of ten years. This appeal followed.

## II. Law and Analysis

### A. Jail Phone Call

{¶ 17} In his first assignment of error, Womack contends that the trial court committed reversible error by allowing his jail phone call with his mother to be admitted into evidence.

{¶ 18} This court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion standard. *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 32, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. Accordingly, our inquiry is limited to determining whether the trial court's evidentiary rulings were unreasonable, arbitrary, or unconscionable. *Sheline* at *id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

{¶ 19} Evid.R. 801 defines "hearsay" as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Subsection D of the rule provides that certain statements are admissible because they are not hearsay; one such exception is an "admission by a party-opponent." Evid.R. 801(D)(2)(a). A statement is deemed an

admission by a party-opponent if "the statement is offered against a party and is * * * the party's own statement, in either an individual or a representative capacity * * *." *Id.*

{¶ 20} The trial court admitted the jail call between Womack and his mother into evidence as an admission by a party-opponent under Evid.R. 801(D)(2)(a). (Tr. 249.) On appeal, Womack contends that his statements on the call were not admissible under Evid.R. 801(D)(2)(a) because they were not an admission of guilt to the carjacking, but merely "an admission that he was lying to the police about collateral matters related to the offenses." In short, Womack asserts that only admissions that go to the ultimate issue of guilt are admissible under Evid.R. 801(D)(2)(a) and therefore, the trial court abused its discretion in admitting the jail call into evidence. Womack's argument is without merit.

{¶ 21} In *State v. Castellon*, 8th Dist. Cuyahoga No. 106813, 2019-Ohio-628, this court found that a defendant's statements in a jail call that his "story changed so many different directions" because he was "confused" about whether he raped the victim were admissible under Evid.R. 801(D)(2)(a) as an admission of a party-opponent. *Id.* at ¶ 38. Likewise, in *State v. Johnson*, 8th Dist. Cuyahoga No. 71137, 1997 Ohio App. LEXIS 3215 (July 24, 1997), this court found that a defendant's written statement in which he lied about details of the murder and aggravated robbery with which he was charged was an admission by a party-opponent and admissible under Evid.R. 801(D)(2)(a), even though the admission was not a specific admission that he robbed and murdered the victim. *Id.* at 5. Similarly, in

*State v. Hampton*, 5th Dist. Stark No. 2018 CA 00123, 2019-Ohio-2555, the Fifth District found that a defendant's suggestion to a witness during a jail call that she should not come to court to testify against him, although not an admission regarding the ultimate issue, was an admission of a party-opponent and therefore admissible under Evid.R. 801(D)(2)(a) as substantive evidence of the defendant's guilt. *Id.* at ¶ 38.

{¶ 22} The same reasoning applies here. Womack's statements in the jail phone call that he lied to the police were admissions, even though he did not admit he was the robber who carjacked Kander's car. The first assignment of error is overruled.

### B. Sufficiency of the Evidence

{¶ 23} In his second assignment of error, Womack contends that his convictions on Counts 4, 5, and 6 — the counts relating to Leduc — were not supported by sufficient evidence.

{¶ 24} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 25} In Count 4, Womack was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, shall have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶ 26} Womack contends that his conviction was not supported by sufficient evidence because his only objective during the carjacking was to rob Kander of his car, which he did. He asserts that it is immaterial that Leduc happened to have personal items in Kander's car when it was carjacked because he did not intend to rob her of these items; they only "happened to be in the car" when it was carjacked. Accordingly, he contends there was no aggravated robbery of Leduc.

{¶ 27} We find that Womack's conviction for aggravated robbery against Leduc was supported by sufficient evidence. Both Leduc and Womack were getting out of the car when Womack approached. Womack showed Kander his gun, and Leduc testified that even though she did not see the gun, she knew from Kander's reaction that the carjacker had a gun and she fearfully ran away. (Tr. 85.) That the car belonged to Kander is not relevant to whether Leduc was a victim of Womack's

aggravated robbery. And Womack's after-the-fact assertion that he wanted to steal only the car is merely self-serving; there is no evidence in the record to support or disprove that assertion.

{¶ 28} This court has recognized that "robbery is an offense against persons, not property." *State v. Miller*, 8th Dist. Cuyahoga No. 106051, 2018-Ohio-2127, ¶ 12. As stated in *Miller*, "the 'gravamen' of theft is depriving the owner of his or her property." *Id.* "The 'gravamen of robbery,' however, is not just to deprive the owner of his or her property, but also to inflict harm on someone or threaten to do so while committing the theft offense." *Id.* There is an element of actual or potential harm to persons in the offense of robbery, and certainly aggravated robbery. *Id.*

{¶ 29} Womack brandished a gun, thereby threatening harm to both Kander and Leduc, while he carjacked Kander's car. He also robbed Leduc of both the car she had been riding in and her personal belongings that were in Kander's car.

{¶ 30} Viewing this evidence in a light most favorable to the prosecution, we find that Womack's conviction on Count 4 for aggravated robbery against Leduc is supported by sufficient evidence.

{¶ 31} Accordingly, we need not address the sufficiency of the evidence relating to Counts 5 and 6 because those offenses merged with Count 4, and the state elected that Womack be sentenced on Count 4. When counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence on the counts that are subject to merger because any

error relating to those counts would be harmless. *State v. Rosa*, 8th Dist. Cuyahoga No. 108051, 2019-Ohio-4888, ¶ 26, fn. 1, citing *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14.

{¶ 32} The second assignment of error is overruled.

### C. Manifest Weight of the Evidence

{¶ 33} In his third assignment of error, Womac contends that his convictions are against the manifest weight of the evidence.

{¶ 34} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 35} Womack contends that his convictions were against the manifest weight of the evidence because the case against him "was not strong." He asserts that Kander's identification of him as the robber was suspect because Kander only had a brief opportunity to observe the robber under stressful circumstances; the jail phone call was not indicative of guilt; the fact that he was driving the stolen vehicle the day after the robbery does not establish he was the robber; and his admission

that the blue hoodie found in the garage belonged to him did not establish that the robber wore the same hoodie. Womack's arguments are without merit.

{¶ 36} Kander testified that he got a "clear look" at the robber and the day after the robbery, he identified Womack as the robber with "100 percent certainty." In addition to Kander's unequivocal identification of Womack, the evidence demonstrated that Womack was driving the stolen vehicle the morning after the robbery, and "took off at a high rate of speed" immediately after seeing a Euclid police cruiser. The evidence also demonstrated that in his statement to the police immediately after the robbery, Kander said the robber was wearing a blue hoodie. Womack admitted at trial that he was wearing a blue hoodie while driving the stolen car the morning after the robbery, but said he took the hoodie off when he exited the car after the police chase because "they were looking for someone with a blue hoodie." It is curious that both the robber and Womack were wearing a blue hoodie.

{¶ 37} Furthermore, Womack admitted at trial that his various explanations to Detective Caruso after his arrest regarding how he came to be in possession of the car were not true. And at trial, he gave an entirely different version of events. We agree with the trial court's assessment, as the trier of fact, that Womack's stories to Detective Caruso were "so fantastic, and so unbelievable" that his trial testimony was simply not credible.

{¶ 38} This is not the exceptional case where the evidence weighs heavily against the convictions and the trier of fact lost its way in convicting Womack. The third assignment of error is overruled.

### D. Merger of Aggravated Robbery Counts

{¶ 39} In his fourth assignment of error, Womack contends that his convictions on Counts 1 and 4 (aggravated robbery of Kander and aggravated robbery of Leduc respectively) were allied offenses that should have merged for sentencing.

{¶ 40} Defense counsel did not raise this issue regarding merger in the trial court and, therefore, has forfeited all but plain error. A forfeited error is not reversible error unless it affected the outcome of the proceedings and reversal is necessary to correct a manifest miscarriage of justice. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

{¶ 41} R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution, prohibiting multiple punishments for the same offense. Under R.C. 2941.25(A), when the same conduct by the defendant "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Nevertheless, under R.C. 2941.25(B),

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 42} The trial court did not merge the aggravated robbery convictions because they each involved a separate victim. Womack contends that even if there

were two victims, there was only one robbery and one animus — to steal Kander's car — and therefore, the convictions should have merged.

{¶ 43} The Ohio Supreme Court has made clear, however, that "[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. Here, Womack's conduct victimized both Leduc and Kander: he threatened the physical safety of both of them by brandishing a gun during the carjacking. As discussed earlier, robbery and aggravated robbery are offenses against persons, not property. The harm to Leduc and Kander during the carjacking was separate and distinct, and Womack can therefore be convicted and sentenced on two counts of aggravated robbery.

{¶ 44} Womack having failed to demonstrate any plain error in the trial court's failure to merge Counts 1 and 4, the fourth assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR