[Cite as *State v. Gray*, 2023-Ohio-215.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                :

    Plaintiff-Appellee,              :

                                                   No. 111263

    v.                                            :

GIANNI A. GRAY,                            :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 26, 2023

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-18-631500-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey Schnatter, and Margaret Graham, Assistant Prosecuting Attorneys, *for appellee*.

Russell S. Bensing, *for appellant*.

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Gianni Gray ("Gray") appeals his convictions and asks this court to vacate his convictions and remand his case for a retrial. We decline and affirm Gray's convictions.

{¶ 2} Gray was charged in a multi-count indictment on May 18, 2020. Gray subsequently indicated to the court that he wanted to represent himself and signed a waiver of counsel pro se. Gray was referred for a competency examination to evaluate if he was competent to represent himself. Following receipt of the competency report, stipulations by the state and defense counsel and a hearing by the trial court, Gray was determined to be competent to waive counsel and proceed pro se. The trial court appointed standby counsel to assist Gray. After a jury trial, Gray was found guilty of two counts of aggravated murder, unspecified felonies, in violation of R.C. 2903.01(A), with one-, three-, five-, and 54-month gun specifications; two counts of murder, unspecified felonies, in violation of R.C. 2903.02(B), with one-, three-, five-, and 54-month gun specifications; three counts of felonious assault, second-degree felonies, in violation of R.C. 2903.11(A)(2), with one-, three-, five-, and 54-month gun specifications; one count of discharging of a firearm on or near prohibited premises, a first-degree felony, in violation of R.C. 2923.162(A)(3), with one-, three-, five-, and 54-month gun specifications; one count of tampering with evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1); and one count of having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(3). Gray was sentenced to 84 years to life in prison, with the possibility of parole after 70 years.

I.    **Facts and Procedural History**

{¶ 3} On July 14, 2019, on the I-90 westbound and W. 117th exit ramp, surveillance video showed a blue Chevy Cobalt driving on the ramp, in the middle lane, and then stopping at the traffic light. A silver Audi SUV pulled up in the left-hand lane next to the Chevy, and someone from the passenger side fired shots into the Chevy. The silver Audi SUV then drove over the median, back onto the highway and drove away. On the right-hand side of the Chevy was a white car, and behind the Chevy was a green SUV. Officer Thomas Ross ("Officer Ross") was the first policer to arrive at the scene. He testified that when he checked on the passengers in the Chevy Cobalt, there were no signs of life in the two passengers.

{¶ 4} At trial, Rebecca Sherman ("Sherman"), the driver of the white car, testified that she was struck by one of the bullets coming from the silver Audi SUV. She testified that she looked into the Chevy and saw the injured body of the passenger. Once Sherman realized that she was struck by a bullet in her left side, she drove away and called 911.

{¶ 5} Jeffrey Jackson ("Jackson"), the driver of the green SUV, testified that while he was behind the Chevy, he thought he heard fireworks. He then looked up and he observed a gun and heard additional shots coming from the silver Audi SUV next to the Chevy. Jackson described the gun as a black handgun and believed it to be a semi-automatic weapon based on his knowledge of the speed at which the gun was fired. Jackson also testified that the person holding the gun had a darker skin tone. Jackson observed the silver Audi SUV leaving the scene, and he called 911.

Jackson approached the Chevy and observed that both the driver and front seat passenger were deceased. The driver of the vehicle was later identified as Malachia Stewart ("Stewart") and the passenger was identified as Andre Williams ("Williams").

{¶ 6} Sergeant Evelyn Montalvo ("Sgt. Montalvo") testified that the following morning, the Cleveland Police Department ("CPD") received an anonymous tip that Gray was involved in the shooting and gave a description of the silver Audi SUV from which the shots were fired. The tip provided the address of the home where the silver Audi SUV was located and Gray resided. The anonymous tip provided information to the police that the murder was in retaliation for the murder of Gray's brother in 2017. Sgt. Montalvo testified that she verified the address given by the anonymous tipster and learned that it was in the city of Garfield Heights. Sgt. Montalvo called the Garfield Heights Police Department and asked Officer Eric Cornell ("Officer Cornell") to drive by the address and locate the vehicle.

{¶ 7} Officer Cornell later testified that he drove past the address and observed a vehicle matching the description of the one involved in the shooting and retrieved a license plate number. After Officer Cornell shared the information with the CPD, the CPD continued their investigation into Gray. Sgt. Montalvo confirmed that the vehicle located at Gray's house was a loaner vehicle from a local dealership loaned to Gray while his own vehicle was being serviced. Sgt. Montalvo testified that

she was familiar with the murder of Gray's brother and that Stewart was named as person of interest in his murder.

**{¶ 8}** Sgt. Montalvo reiterated during her testimony that an anonymous tip was not enough evidence to arrest and charge a suspect. However, after Sgt. Montalvo's testimony, the trial court gave the jury a couple of limiting instructions regarding an anonymous tip stating:

> You heard testimony regarding an anonymous tip. An anonymous tip is what we call hearsay. It's any out of court statement. It's not introduced to prove the truth of the matter, or the truth of what was contained in the anonymous tip. It is introduced solely to inform you about why the officers, or in this case the sergeant, took the next steps she did, why did she go to this place, why did she go there. So it's not introduced to prove a matter. It's introduced to guide her or to inform her next steps in her investigation.

(Tr. 1240.)

**{¶ 9}** Next, Detective Bruce Vowell ("Det. Vowell") testified that he responded to the scene where the shooting occurred. Det. Vowell spoke to Sherman and other witnesses at the scene. He later reviewed the actual surveillance video of the shooting obtained from Delta Auto. Cartridge casings from the firearm used in the shooting were located, and the word "Blazer" was stamped on them. Det. Vowell also confirmed Cornell's testimony about the silver SUV being a loaner from a local dealership and that the CPD had the SUV towed and processed for evidence. Det. Vowell then executed a warrant on Gray's residence and recovered a firearm, specifically a Glock Gen 4, a Glock speed loader, firearm grips, Gray's mail, and cell

phones. Further investigation lead Det. Vowell to Fin Feather Fur Outfitters, a store that sells guns and other items. Det. Vowell testified that after reviewing surveillance video from Fin Feather Fur Outfitters, he observed Gray purchasing a Glock Gen 4, the speed loaders, and grips that were found in Gray's home during the execution of the search warrant. Det. Vowell noted that Gray was on parole at the time of the purchase and the GPS monitor tracked him going into the gun store. The gun store owner testified that the firearm and firearm materials found in Gray's home were consistent with what Gray purchased from his store.

{¶ 10} Detective Darren Robinson ("Det. Robinson") testified that he was involved in collecting evidence at the crime scene. He recovered 9-millimeter cartridge casings, some of which were stamped "Blazer" and some were stamped "Hornady." Det. Robinson also testified that he took photographs during the execution of the search warrant at Gray's residence, which included pictures of the recovered Glock, the speed loaders, grips, and Gray's parole paperwork.

{¶ 11} Jeffrey Oblock ("Oblock"), a DNA analyst with the Cuyahoga County Regional Forensic Science Laboratory testified that Stewart's DNA was present on the top sections of the front passenger door window frame of the silver Audi SUV that was loaned to Gray from the dealership. Stewart's DNA was also located on the passenger side mirror and on the interior front passenger vent of the SUV. Gray and Stewart's DNA were found on the interior driver door handle, steering wheel, and

gear shift of the SUV. Employees testified that the silver Audi SUV was the same one that was loaned to Gray.

{¶ 12} Later during trial, the trial court asked Gray if he was going to provide testimony that would give him an alibi for the time of the shooting. Gray told the trial court that he would not. He stated, "I'm not providing no witnesses that's going to say, like, 'I was here at the time of the thing,' no." (Tr. 1745.) However, Gray did inform the court that he wanted to call Latanya Burt ("Burt") as a witness. Gray wanted Burt to testify that she dropped Gray's son off at Gray's home around 5 o'clock on the day of the murder. Gray reiterated that it was not to provide an alibi, but to establish that his son was with him on the day of the murder. (Tr. 2538.) The trial court explained to Gray that if he was testifying that his son was with him at the time of the murder, then it is evidence of an alibi. The court explained to Gray that Burt's testimony is not relevant to the case if it was not to be used to provide an alibi for Gray.

{¶ 13} The trial court ruled that Burt's testimony would not be admitted into evidence citing several cases. The trial court also ruled that Gray's attempt to offer this evidence was untimely and unspecific to be presented as an alibi. The trial court used the three-part test from *State v. Russell*, 26 Ohio App.3d 185, 187, 499 N.E.2d 15 (9th Dist.1985): "(1) Was the notice withheld from the prosecution in bad faith? (2) Does the alibi evidence constitute surprise or otherwise prejudice the prosecution? and (3) Is the alibi evidence necessary to insure a fair trial for the

defendant?"  At the conclusion of the trial, the trial court allowed Gray to include text messages between Burt and him that Gray argued would have been included as his alibi evidence.

{¶ 14}  At the conclusion of the trial, the trial court reminded the jury of the limiting instruction on the use of the anonymous tip.  The trial court stated:

> Throughout this trial, you heard testimony about anonymous tips and out of court statements not testified to by a witness.  That testimony was provided for the limited purpose of explaining the course of the investigation.  It cannot be considered for any other purpose that the purpose identified.

(Tr. 2840-2841.)

## A.  *Batson* Challenge

{¶ 15}  Before trial and during voir dire, the state used a peremptory strike to excuse an African-American juror.  Gray raised a *Batson* challenge based on the juror's race.  The trial court stated that the state had the burden of presenting a non-discriminatory reason for the juror's dismissal.  The trial court also stated that another African-American juror was on the jury and another one was going to replace the dismissed juror.  However, the trial court allowed the state to present its reasons for dismissing the juror.

{¶ 16}  The state listed its reasons as the juror stating he had a bad experience with the police when his home was burglarized, he was annoyed with being called for jury duty, and he did not necessarily believe in the justice system.  The state explained that they wanted jurors who believe in the justice system and were going

to follow the rules given by the trial court. The trial court ruled that the state presented nondiscriminatory reasons for the juror's dismissal and denied Gray's *Batson* challenge.

{¶ 17} At the end of the trial, Gray was found guilty and sentenced to 84 years to life imprisonment. He filed this appeal and assigns three errors for our review:

1. The trial court erred in the admission of testimony that did not qualify under any exceptions to the hearsay rule, was testimonial, and was a violation of defendant's right to confrontation under the Sixth and Fourteenth amendments to the United States Constitution;

2. The trial court erred in excluding testimony to be presented by the defendant under the mistaken belief that it was alibi evidence; and

3. The trial court erred in determining that the state's rationale for using a peremptory challenge on an African-American member of the jury panel was race-neutral.

## II. Anonymous Tip and Hearsay Testimony

### A. Standard of Review

{¶ 18} "A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay." *State v. Wingfield*, 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, ¶ 29, citing *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 10. "We therefore will not disturb a trial court's decision regarding the admissibility of hearsay evidence absent an abuse of discretion and the defendant

suffers material prejudice." *Id.*, citing *Woods*, citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

**B.    Law and Analysis**

{¶ 19} In Gray's first assignment of error, he argues that the trial court erred by allowing Sgt. Montalvo to testify about the tip she received from the anonymous caller.  Gray argues that the testimony is hearsay and violates his right to confront a witness, which is guaranteed by the United States Constitution.  "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Id.* at ¶ 30, quoting Evid.R. 801(C).  "If either element is missing — (1) a statement or (2) offered for its truth — the testimony is not hearsay." *Id.*, citing *State v. Holt*, 9th Dist. Lorain No. 97CA006985, 1999 Ohio App. LEXIS 4149, 8 (Sept. 8, 1996).

{¶ 20} Sgt. Montalvo testified that her testimony about the anonymous tipster is what guided the CPD's investigation.  Sgt. Montalvo received an address and contacted Garfield Heights to verify if the suspect car was at the address.  Once verified, the investigation continued to the auto repair shop and then to the gun shop.  The trial court stated, in part:

> An anonymous tip is what we call hearsay.  It's any out of court statement.  It's not introduced to prove the truth of the matter, or the truth of what was contained in the anonymous tip.  It is introduced solely to inform you about why the officers, or in this case the sergeant, took the next steps she did, why did she go to this place, why did she go there.  So it's not introduced to prove a matter.  It's

introduced to guide her or to inform her next steps in her investigation.

(Tr. 1240.)

{¶ 21} Here, the state was not offering the anonymous tips to prove the truth of the matter asserted that Gray was guilty of murder. Instead, testimony regarding the anonymous tip was presented merely to establish Sgt. Montalvo's reasons for investigating Gray and his activities. *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007-Ohio-2372, ¶ 45. *See also State v Dakdouk*, 8th Dist. Cuyahoga No. 77701, 2001 Ohio App. LEXIS 741 (court held that the admission of the detective's testimony about an anonymous tip was not inadmissible hearsay evidence because it was not offered to prove the truth of the matter asserted, but rather to merely establish the detective's reason for investigating the appellant); *State v. Carpenter*, 6th Dist. Lucas No. L-05-1219, 2006-Ohio-4296, ¶ 15 ("when a statement is offered into evidence to explain the conduct of a police officer's investigation of a crime, it is not considered to be hearsay."); *State v. Craft*, 12th Dist. Butler No. CA2006-06-145, 2007-Ohio-4116, ¶ 51 ("where a statement made by an individual to a law enforcement officer is offered to prove the officer's subsequent investigative activities, the statement does not constitute hearsay and is properly admissible.").

{¶ 22} Gray argues that the admission of the testimony concerning the anonymous tip violates his right to confrontation that is protected under the United

States Constitution. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

> With respect to hearsay, the United State Supreme Court has held that the Confrontation Clause prohibits the admission of a testimonial, out-of-court statement made by a witness unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.

*Craft* at ¶ 50, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "The clause does not, however, 'bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Id.*, citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L. Ed. 2d 425 (1985).

{¶ 23} Sgt. Montalvo's testimony about the anonymous caller was not used to establish the truth of the matter asserted as stated above. Sgt. Montalvo testified that the information from the tipster was not used to arrest or charge Gray, but rather to steer the investigation. The trial court, before jury deliberations, stated again to the jury:

> Throughout this trial, you heard testimony about anonymous tips and out of court statements not testified to by a witness. That testimony was provided for the limited purpose of explaining the course of the investigation. It cannot be considered for any other purpose that the purpose identified.

(Tr. 2840-2841.)

{¶ 24} Gray cited *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181 to support his contention. In *Ricks*, the Supreme Court held, "[I]f the testimony that is ostensibly offered to explain police conduct is more prejudicial than probative, the jury is more likely to rely on the testimony to prove the matter asserted, which tilts the particular testimony into hearsay." *Id.* at ¶ 26. Additionally,

> in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged.

*Id.* at ¶ 27.

{¶ 25} Here, Sgt. Montalvo's testimony was that the anonymous caller provided the address of Gray, the vehicle's location that was involved in the shooting, and information that Gray may be involved. Gray had not been charged with any crime. The information was simply used to begin the investigation. The trial court gave clear instructions to the jury that the statements were merely to provide information concerning CPD's investigation. Thus we determine that Sgt. Montalvo's testimony concerning the anonymous caller does not violate the confrontation clause of the United States Constitution and was not inadmissible hearsay.

{¶ 26} Therefore, Gray's first assignment of error is overruled.

## III.  Exclusion of Alibi Evidence

### A.  Standard of Review

{¶ 27} "The admission or exclusion of evidence lies in the trial court's sound discretion." *State v. Rogers*, 8th Dist. Cuyahoga No. 105879, 2018-Ohio-3495, ¶ 15, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). "This court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion standard." *State v. Womack*, 8th Dist. Cuyahoga No. 108422, 2020-Ohio-574, ¶ 18, quoting *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 32. "An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *State v. Mills*, 8th Dist. Cuyahoga No. 110893, 2022-Ohio-4010, ¶ 54, citing *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

### B.  Law and Analysis

{¶ 28} In Gray's second assignment of error, he contends that the trial court abused its discretion by excluding Burt's testimony and mistakenly believing that the testimony was alibi evidence.  Gray argues that Burt's testimony that she dropped his child off at Gray's home on the day of the murders did not constitute an alibi.  Rather, Gray argues that the testimony was to simply show that his child was with him during the time of the shooting.  However, Gray's argument is misplaced.  Offering testimony that he was with his child to demonstrate that he "wasn't riding around trying to shoot nobody" is in fact alibi evidence.  (Tr. 2597.)

{¶ 29} "'Alibi has been defined as follows: the defense of alibi means that the defendant claims he was at some place other than the scene of the crime at the time the crime was taking place, hence he could not have taken part.'" *State v. Elersic*, 11th Dist. Geauga Nos. 2001-G-2335 and 2003-G-2512, 2003-Ohio-7218, ¶ 49, quoting *State v. Cloud*, 7th Dist. Columbiana No. 98CO51, 2001-Ohio-3396, quoting *State v. Payne*, 104 Ohio App. 410, 414, 149 N.E.2d 583 (10th Dist.1957). Gray claiming that he was with his son instead of at the scene of the crime is in fact the very definition of alibi evidence.

{¶ 30} However, Gray claims that Burt's testimony was not to prove his alibi. If Burt's testimony was not to be used as alibi testimony, the trial court ruled that the testimony was not relevant to the case. "Irrelevant evidence is not admissible." *State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017-Ohio-8011, ¶ 59, citing Evid.R. 402.

{¶ 31} "Relevant evidence is defined as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Daniels*, 8th Dist. Cuyahoga No. 81367, 2003-Ohio-1344, ¶ 29, quoting Evid.R. 401. "While the admission or exclusion of relevant evidence rests within the sound discretion of the trial court, irrelevant evidence is inadmissible. *See State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus (1987); *see also* Evid.R. 402." *Id*.

{¶ 32} If Burt's testimony was not being used to provide Gray with an alibi, then her testimony was irrelevant to the case. Gray's argument demonstrated that he was attempting to use Burt's testimony as alibi evidence. The trial court ruled that the Gray's attempt to use Burt's testimony was untimely filed and not specific enough to be presented as an alibi. The trial court cited the state's earlier attempt at requesting alibi evidence from Gray and his denial. The trial court, however, did allow Gray to enter into evidence the text messages between Gray and Burt.

{¶ 33} Gray's argument that the trial court erred by not allowing Burt's testimony is misplaced. He continued to argue that this testimony was not to demonstrate that he was not at the shooting. Thus, the testimony is irrelevant to the case, and the trial court did not abuse its discretion in excluding Burt's testimony. Gray's second assignment of error is overruled.

## IV. *Batson* Challenge

### A. Standard of Review

{¶ 34} "In reviewing a trial court's ruling on a *Batson* challenge, this court will not overturn the court's decision unless we determine that the decision is clearly erroneous." *State v. Lee*, 8th Dist. Cuyahoga No. 109215, 2020-Ohio-6738, ¶ 11, citing *State v. Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, ¶ 35. "'This Court gives deference to the trial court's ruling on a *Batson* issue, which is mainly an evaluation of credibility.'" *Id.*, quoting *State v. Boynton*, 8th Dist. Cuyahoga No. 93598, 2010-Ohio-4248, ¶ 12, citing *State v. Murphy*, 91 Ohio St.3d 516, 530,

2001-Ohio-112, 747 N.E.2d 765. "'Deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations.'" *Id.*, quoting *State v. Ford*, 8th Dist. Cuyahoga No. 105698, 2018-Ohio-2128, ¶ 22, quoting *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## B.    Law and Analysis

{¶ 35} In Gray's third assignment of error, he argues that the trial court erred in determining that the state's rationale for using a peremptory challenge on an African-American juror was race-neutral.

> "Whenever a party opposes a peremptory challenge by claiming racial discrimination, the duty of the trial court is to decide whether granting the strike will contaminate jury selection through unconstitutional means. The inquiry, therefore, is whether the trial court's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process. A trial court's finding of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous. The trial court, in supervising voir dire, is best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility." *Martin v. Nguyen*, 8th Dist. Cuyahoga No. 84771, 2005-Ohio-1011, ¶ 9.

*State v. Saunders*, 2016-Ohio-292, 58 N.E.3d 470, ¶ 6 (8th Dist.).

{¶ 36} In *Batson*, the United States Supreme Court found that the Equal Protection Clause of the United States Constitution applies to a state's use of peremptory challenges during jury selection. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* prohibits the state from utilizing a

peremptory challenge solely on the basis of the potential juror's race or "on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson* at 89.

{¶ 37} There is a three-step test to determine whether or not a peremptory strike violates a defendant's equal protection rights. *State v. Blackshear*, 8th Dist. Cuyahoga No. 108916, 2020-Ohio-3187, ¶ 18. First, the defendant must demonstrate a prima facie case that the peremptory strike was racially discriminatory. *Id.* To make this case, the defendant must show, "'(a) that members of a recognized racial group were peremptorily challenged; and (b) that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race.'" (Citations omitted.) *Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, at ¶ 32, quoting *State v. Hill*, 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271 (1995).

{¶ 38} Second, "[i]f the defendant presents a prima facie case, the burden then shifts to the state to provide a race-neutral basis for the peremptory challenge." *Blackshear* at ¶ 19, citing *State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 44 (8th Dist.). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (Citations omitted.) *State v. Burkes*, 8th Dist. Cuyahoga No. 106412, 2018-Ohio-4854, ¶ 58.

{¶ 39} Third, the trial court must determine whether or not the defendant proved that the peremptory strike was purposeful discrimination. *Blackshear* at

¶ 20. "The trial court must examine the peremptory challenge in context to ensure the offered race-neutral reasoning is not simply pretextual." *May* at ¶ 45. The trial court considers the persuasiveness of the state's reasoning, but the opponent bears the burden of persuasion regarding racial motivation. *Moseley* at ¶ 34.

{¶ 40} When the state used a peremptory strike to excuse an African-American juror, Gray raised a *Batson* challenge based on the juror's race. The trial court stated that the state had the burden of presenting a non-discriminatory reason for the juror's dismissal. The trial court allowed the state to present its reasons for dismissing the juror.

{¶ 41} The state listed its reasons as the juror stating he had a bad experience with the police when his home was burglarized, he was annoyed with being called for jury duty, and he did not necessarily believe in the justice system. The state explained that they wanted jurors who believe in the justice system and were going to follow the rules given by the trial court. The trial court ruled that the state presented nondiscriminatory reasons for the juror's dismissal and denied Gray's *Batson* challenge.

{¶ 42} "'A trial court's finding of no discriminatory intent will not be reversed on appeal unless it was clearly erroneous.'" *Blackshear*, 8th Dist. Cuyahoga No. 108916, 2020-Ohio-3187, at ¶ 21, quoting *State v. Webster*, 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, ¶ 59, citing *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992), following *Hernandez, supra*. "'This deferential

standard arises from the fact that step three of the Batson inquiry turns largely on the evaluation of credibility by the trial court.'" *Id.*, quoting *Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, at ¶ 35. The trial court found the state's explanation credible.

{¶ 43} After reviewing the record, we find the record supports the trial court's finding that the state provided a legitimate, race-neutral explanation to peremptorily excuse the juror, and we cannot find the trial court's denial of Gray's *Batson* challenge was clearly erroneous. However, we will note that the trial court's statements that an African-American was already on the jury and one was next to replace the dismissed juror is unnecessary.

{¶ 44} Therefore, Gray's third assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY