[Cite as *RFK Bldg., L.L.C. v. RELD & G Ent., Inc.*, 2025-Ohio-4465.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RFK BUILDING, LLC,                    :

    Plaintiff-Appellee,          :

    v.                                   :

RELD & G ENTERPRISE, INC., ET AL.,  :

    Defendants-Appellees.        :

No. 114640

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 25, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-977872

---

### *Appearances:*

Dibo Law, LLC, Nathalie A. Dibo, Mary Hanna, and Kyle
D. Dunnell, *for appellee* RFK Building, LLC.

Thrasher Dismore & Dolan, Leo M. Spellacy, Jr., Ezio A.
Listati, and Samuel T. O'Leary, *for appellants*.

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Appellants Jean Fakhoury ("Fakhoury"), Rami Chaloub and Elie Chaloub (collectively "Nonparties") appeal the trial court's denial of their motions for a protective order and to quash the subpoenas served on them by plaintiff-

appellee RFK Building, LLC ("RFK"). For the reasons that follow, we reverse the trial court's judgment entry and remand the matter.

**FACTS AND PROCEDURAL HISTORY**

{¶ 2} This case stems from a cognovit promissory note ("Note") between RFK and FUNNN Limited, LLC ("FUNNN") that was executed on August 31, 2016, by Fayez Abboud, on behalf of RFK, in the amount of $650,000.

{¶ 3} On April 11, 2023, RFK filed the instant lawsuit against defendants RELD & G Enterprise, Inc. ("RELD"), Rabih Eldanaf ("Eldanaf"), Fakhoury Enterprises, Inc. ("Fakhoury Ent.") and Newcoast, Inc. ("Newcoast") (collectively, "corporate defendants") alleging RELD breached an oral agreement to pay monies pursuant to the Note. RFK also brought claims for declaratory judgment, unjust enrichment, fraudulent inducement, interference with a contract and civil conspiracy against the various defendants, all related to the Note.

{¶ 4} RFK alleged it mortgaged its property located at 21700 Miles Road, North Randall, Ohio 44128 (the "Miles Road Property") to secure the Note and that RELD also executed a mortgage on its property located at 12408 Union Avenue, Unit A in Cleveland, Ohio 44105 (the "Union Property"), to secure the Note. At the Union Property there is a liquor and convenience store known as Union Liquor ("Union Liquor"), which is at the center of this dispute.

{¶ 5} RFK alleged in its complaint that RELD agreed orally to be equally responsible for the Note and that the parties agreed in the event that any of the

businesses located at either of their properties were sold to a third party, 25 percent of the proceeds from the sale would go to pay down the Note to FUNNN.

{¶ 6} In April 2016, Newcoast, a former tenant of RELD's Union Property, sold Union Liquor to Fakhoury Ent. and RFK alleges none of the proceeds from that sale went to pay down the Note pursuant to the oral agreement between RFK and RELD.

{¶ 7} On October 16 and 17, 2023, after the lawsuit was filed, RFK filed notices of service of several subpoenas, including ones issued to the Nonparties, which are the subject of this appeal. The subpoenas request the production of many documents including bank records and tax returns from 2007. Fakhoury's subpoena requested 26 categories of documents and Rami Chaloub's subpoena requested 29 categories of documents.

{¶ 8} On November 3, 2023, RFK filed a subpoena to U.S. Bank N.A. requesting production of "[a]ll bank statements, including cancelled checks, deposit slips, withdrawal slips, wire transfer, relating to any account owned by Boutros Chaloub, Elie Chaloub, and/or Boutros Chaloub Trust from 2016 to the present."

{¶ 9} Fakhoury Ent. and the Nonparties filed two separate motions for protective orders and to quash the subpoenas.

{¶ 10} A hearing was held on February 2, 2024, regarding the motions for protective order and to quash the subpoenas. At the hearing, the Nonparties put forth evidence via witness testimony by Fakhoury and Rami Chaloub.

**Hearing Testimony**

{¶ 11} Fakhoury testified that he is the sole owner of Fakhoury Ent. and that Rami Chaloub is a W-2 employee and manager at Fakhoury Ent. Fakhoury testified that Rami Chaloub is the manager of Union Liquor and runs the store for Fakhoury dealing with daily tasks such as inventory, mail, etc. Rami Chaloub does not have any ownership interest in Fakhoury Ent.

{¶ 12} Fakhoury further testified that the Boutros Chaloub Trust has nothing to do with Fakhoury Ent.

{¶ 13} Fakhoury testified that he purchased Union Liquor for $500,000 in April 2016, several months before the Note was signed. Fakhoury testified that the liquor license for Union Liquor transferred to Fakhoury Ent. on August 23, 2016. Fakhoury Ent. operated the convenience store in Union Liquor, which had assets that were procured pursuant to an asset purchase agreement between Fakhoury Ent. and Newcoast on April 16, 2016, prior to the execution of the Note.

{¶ 14} Fakhoury testified that he was unaware of any agreement between RFK and RELD associated with the sale of Union Liquor and he was unaware of the Note between RFK and FUNNN. He testified that he knew nothing about whether RELD pledged its building to FUNNN and had no idea about any agreement between RFK and RELD. Fakhoury did not have any business dealings with RFK in 2016.

{¶ 15} Fakhoury testified that a company called KDOFM Financial Services had been providing services for the ATM machine located in Union Liquor on behalf of Fakhoury Ent. since approximately February 2017.

{¶ 16} According to Fakhoury, any and all payments made to Rami Chaloub are in the possession of Fakhoury Ent. Fakhoury Ent. has its own tax returns. Fakhoury Ent. has all the documents related to Fakhoury Ent.

{¶ 17} Rami Chaloub also testified at the hearing. Rami Chaloub testified that he used to run Union Liquor from 2003-2008 for Achlex, Inc. and then for Newcoast from 2008 to April 2016. He did not manage the store from April 2016 to November 2016.

{¶ 18} Chaloub stated that he has no ownership interest in Fakhoury Ent. and has never received any dividends or distributions from Fakhoury Ent. Rami Chaloub stated he was a W-2 employee for Fakhoury Ent.

{¶ 19} Rami Chaloub also testified that the Boutros Chaloub Trust has nothing to do with Fakhoury Ent. or this case. Rami Chaloub testified that he is the beneficiary and trustee of the Boutros Chaloub Trust and he objected to the documents requested in the subpoena. The trust has nothing to do with this litigation with RFK, RELD, Newcoast, Rabih Eldanaf or Fakhoury. The trust has no documents related to Union Liquor, Newcoast or Fakhoury Ent.

{¶ 20} Rami Chaloub testified that Elie Chaloub is Rami Chaloub's cousin who left the country in 2013.

{¶ 21} Rami Chaloub never tried to hide the fact that Fakhoury Ent. owned Union Liquor. Rami Chaloub did not know anything about RFK and RELD entering into a promissory note prior to February 2023.

{¶ 22} Rami Chaloub testified that any documents that he had related to Newcoast or Fakhoury Ent. would be in the possession of Newcoast and Fakhoury Ent. He does not have any personal documents related to these two companies.

{¶ 23} Rami Chaloub testified he did not want his personal tax returns to be available to competitors or other liquor businesses. His tax returns from 2007 to the present have no relevance to this case and he feels like it is a fishing expedition.

{¶ 24} Rami Chaloub testified that Newcoast is also owned by Mariam Girgis and that Mariam Girgis has nothing to do with Fakhoury Ent. Anna Roman, Inc. was a liquor store owned by Mariam Girgis. Anna Roman, Inc. is now owned by the Boutros Chaloub Trust.

{¶ 25} On November 7, 2024, the trial court issued a judgment entry denying both Fakhoury Ent.'s and the Nonparties' motions for protective orders and to quash the subpoenas.

**Assignments of Error**

{¶ 26} On December 9, 2024, the Nonparties filed this interlocutory appeal raising two assignments of error:

> 1. The Trial Court abused its discretion by denying the Appellants' motions for a protective order and to quash the subpoenas issued to them by Plaintiff-Appellee RFK Building, LLC, because the subpoenas request documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence, and place an

undue burden on Appellants as Plaintiff-Appellee RFK Building, LLC did not demonstrate a substantial need for the materials that could not otherwise be met.

2. The Trial Court abused its discretion by denying the Appellants' motion for a protective order prior to ordering Appellants to produce their confidential, personal tax returns and bank records without any redaction or restriction on the use of the information.

## LAW AND ARGUMENT

### Standard of Review

{¶ 27} Denials of motions to quash subpoenas served on nonparties are final appealable orders. *Parma v. Schoonover*, 2014-Ohio-400, ¶ 8 (8th Dist.)

{¶ 28} We generally review a trial court's ruling on discovery matters, including motions to quash subpoenas, for an abuse of discretion. *Gangale v. Coyne*, 2022-Ohio-196, ¶ 24 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

### Discovery Requests

{¶ 29} Civ.R. 34(C) governs discovery requests for the production of documents from nonparties. It states, in relevant part:

> Subject to the scope of discovery provisions of Civ.R. 26(B) and 45(F), a person not a party to the action may be compelled to produce documents, electronically stored information or tangible things or to submit to an inspection as provided in Civ. R. 45.

Thus, a subpoena duces tecum issued to a nonparty pursuant to Civ.R. 45 is subject to the scope of discovery as defined by Civ.R. 26(B).

{¶ 30} "Pursuant to Civ.R. 26(B)(1), a party may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." *Molnar v. Margaret W. Wong & Assocs. Co., L.P.A.*, 2021-Ohio-1402, ¶ 31 (8th Dist.) (emphasis added).

{¶ 31} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. James*, 2024-Ohio-1469, ¶ 47 (8th Dist.). "'Irrelevant evidence is not admissible.'" *State v. Gray*, 2023-Ohio-215, ¶ 30 (8th Dist.), quoting *State v. Thomas*, 2017-Ohio-8011, ¶ 59, citing Evid.R. 402. "While the admission or exclusion of relevant evidence rests within the sound discretion of the trial court, irrelevant evidence is inadmissible." *Id.*

{¶ 32} Information when sought by discovery that is not reasonably calculated to lead to discovery of admissible evidence is deemed irrelevant. *Smalley v. Friedman, Domiano & Smith Co. L.P.A.*, 2004-Ohio-2351, ¶ 38 (8th Dist.), citing *Tschantz v. Ferguson*, 97 Ohio App.3d 693 (8th Dist. 1994).

{¶ 33} "Once the plaintiff objected to the relevancy of the information or documents defendants requested, the burden was on defendants to make a prima faci[e] showing of relevance . . . ." *Baynard v. Oakwood Village*, 1997 Ohio App. LEXIS 4652, *13 (8th Dist. Oct. 16, 1997). In *Baynard*, the defendant had to make a prima facia showing of how the discovery of plaintiff's tax returns for the past five

years were "reasonably calculated to lead to the discovery of admissible evidence" that had any bearing on the parties' relevant claims. *Id.*

**Analysis**

{¶ 34} Here, the Nonparties stated in their brief that they objected to the subpoenas and that RFK failed to make a prima facie showing that the subpoena requested documents are relevant, i.e., that they are reasonably calculated to lead to the discovery of admissible evidence. We agree.

{¶ 35} RFK argued that it made a prima facie showing of relevancy based on the alleged intermingling of funds between the defendants in this case and the Nonparties. RFK alleged that it needed the bank records and tax returns of the Nonparties to trace the funds from the sale of Union Liquor from Newcoast to Fakhoury Ent.

{¶ 36} The problem with this argument is that RFK puts forth zero evidence to support the allegation that the sale proceeds of Union Liquor were taken from Fakhoury Ent. and put into accounts owned by Fakhoury, Rami Chaloub or Elie Chaloub. At the hearing, Fakhoury testified that all the financial information regarding the sale would be discoverable in Fakhoury Ent.'s banking and tax records. RFK makes no claims to pierce the corporate veil of Fakhoury Ent. to get to Fakhoury. There is not sufficient evidence to establish that Fakhoury was somehow involved with the Note or the corporate defendants.

{¶ 37} Furthermore, the evidence put forth at the hearing also established that Rami Chaloub, as a manager of Union Liquor, had nothing to do with the sale

of Union Liquor and that he had no ownership interest in Fakhoury Ent. or Union Liquor. The same is true for Elie Chaloub, the cousin of Rami who currently lives outside of this country. There is no evidence to support the allegation that either of their tax returns or bank records are somehow relevant to RFK's claims against RELD and the other defendants. There is no basis for why any proceeds from the sale would be evidenced in either Rami or Elie Chaloub's banking records or tax returns.

{¶ 38} None of the claims asserted by RFK against the corporate defendants have any connection, impact or relation to the Nonparties' bank records and tax information from 2007 or 2016 to present.

{¶ 39} A review of the requested subpoenaed documents reveals that the requested documents are not relevant to RFK's claims since they are not reasonably calculated to lead to the discovery of admissible evidence because they had no tendency to make any fact of consequence to the determination of this action more or less probable than it would be without the evidence. We find RFK has failed to make a prima facie showing of relevancy. As such, because the subpoenaed documents request irrelevant information the requested documents are thereby not discoverable and the subpoenas must be quashed.

{¶ 40} Based on the foregoing, we sustain the Nonparties' first assignment of error that the trial court abused its discretion by not quashing the subpoenas because the requested information is irrelevant. We hereby reverse the trial court's judgment and remand the matter back to the trial court.

{¶ 41} Furthermore, based on our disposition of the Nonparties' first assignment of error, we find that their second assignment of error concerning the trial court's denial of a protective order is moot. *See* App.R. 12(A)(1)(C).

{¶ 42} Judgment reversed and remanded.

It is ordered that appellants recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MICHAEL JOHN RYAN, J., and
ANITA LASTER MAYS, J., CONCUR